# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MAC COSTAS, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ORMAT TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | Case No. 3:18-CV-00271-RCJ-CLB<br><br>**ORDER** |

Plaintiffs file this class action suit[1] against Defendants Ormat Technologies, Inc. ("Defendant" or "Ormat"), Isaac Angel, and Doron Blachar, alleging violations of Rules 10b-5 and 20(a) of the Securities Exchange Act of 1934 ("SEA") and of Israeli securities law. Defendant Ormat files this motion to dismiss. For the following reasons, Defendant Ormat's motion to dismiss is denied and the case will proceed.

///

///

---

[1] The amended complaint has been filed as a class action complaint following the appointment of a Lead Plaintiff, as discussed below. However, the requested class has not yet been certified.

# FACTUAL BACKGROUND

In 2015, Ormat released a new strategic plan indicating its desire to "expand and accelerate growth through acquisitions and other investments, both domestically and globally." (ECF No. 52 at ¶ 47.) Pursuant to the new plan, Ormat acquired the domestic company Viridity Energy, Inc. in 2017 and finalized a Power Purchase Agreement ("PPA") with the Southern California Public Power Authority ("SCPPA"). As a result of those endeavors, Ormat re-evaluated its previous position of completely investing foreign earnings abroad, resulting in the need to perform calculations regarding tax repatriations to the United States. In March 2017, Ormat filed a Form 10-K with the Securities Exchange Commission ("SEC") disclosing the discovery of a material weakness in its internal controls for financial reporting. In May 2018, Ormat issued a press release announcing it would have to delay the filing of its 2018 1Q 10-Q due to errors in the previous consolidated financial statements. Several days later, Ormat announced that the errors discovered would require a restatement of several prior financial reports from 2017. Concurrent with these announcements, Ormat's stock price fell a total of $4 per share, from $56.35 to $52.35. In June 2018, Ormat filed amended versions of the 2017 2Q 10-Q, 2017 3Q 10-Q, and 2017 10-K.

On May 11, 2018, Plaintiff Mac Costas filed the original complaint against Defendants, alleging violations of Rules 10b-5 and 20(a). Following the addition of several interested parties, Plaintiff Phoenix Insurance Company Ltd. was appointed Lead Plaintiff for the proposed class and the class period was designated as August 8, 2017 to May 15, 2018, both dates inclusive. Lead Plaintiff then filed an amended consolidated complaint on May 13, 2019, incorporating the previous claims and adding a claim for violations of Israeli securities laws, to which Ormat filed the present motion to dismiss.

///

///

## LEGAL STANDARD

*1. General Pleading Standard*

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In interpreting this Rule, the Supreme Court has noted that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than . . . 'labels and conclusions' or 'formulaic recitations of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility is satisfied where the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility does not require a demonstration of probability, but "asks for more than a sheer possibility." *Id.*

Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Consequently, while the Court "accept[s] all material allegations in the complaint as true and construe[d] . . . in the light most favorable to" the nonmoving party, *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), it is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is it required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

*2. Securities Fraud Standard*

In a private securities action alleging fraud under Rule 10b-5, a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Securities actions alleging fraud are subject to the heightened standard of Fed. R. Civ. P. 9(b), which requires that a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) also provides that, due to the inherent difficulty in determining a person's state of mind absent discovery, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, in 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), requiring that:

> [T]he complaint . . . specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed . . . [and,] with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b). As a result, the Court applies a heightened pleading standard above that of Rule 9(b).

## ANALYSIS

### 1. *Rule 10b-5 Claims*

Given the heightened pleading standard, the Court finds it more efficient to arrange the analysis by statement in controversy rather than by element.[2] However, with respect to scienter specifically, the Ninth Circuit applies:

---

[2] In both the motion to dismiss and the reply, Defendant challenges only the elements of material misrepresentation and scienter. Within the category of material misrepresentation, Defendant, with one exception, argues only the specificity and particularity aspect. Therefore, the Court will focus on those elements and arguments. However, the Court does so only for the purpose of ruling on the motion to dismiss and explicitly does not rule on whether other arguments against material

> [A] dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a "holistic" review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness.

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009). Accordingly, the Court will include a holistic analysis of scienter following the review of individual statements, should it be necessary.

    *a. Sarbanes-Oxley Certifications*

Defendant contends that Sarbanes-Oxley certifications "are not independently actionable under Section 10(b) of the Exchange Act." (ECF No. 59 at 6:19–25) (citing *In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295 PJH, 2007 WL 760535, at *17 (N.D. Cal. Mar. 9, 2007)).) *In re Silicon Storage* found that:

> [W]ith regard to both the statement regarding inventory valuations and the statement regarding compliance with GAAP, the court notes that there is nothing in either the 1934 Securities Exchange Act or the Sarbanes-Oxley Act and implementing regulations that authorizes plaintiffs to base a claim for securities fraud on an alleged misstatement in a Sarbanes-Oxley certification.

2007 WL 760535 at *17. The Court respectfully disagrees. 15 U.S.C. § 78r(a) ("Section 18(a)") provides that:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder . . . which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance,

---

misrepresentation or arguments relating to the remaining elements have been waived.

> unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

Read simply, the statute indicates that specific persons may be held liable for false or misleading statements included in a report required by the SEA. Although Sarbanes-Oxley is not part of the SEA, the SEC, in interpreting Sarbanes-Oxley, ruled that § 302(a) of Sarbanes-Oxley required certification of reports submitted pursuant to the SEA. *See, e.g.*, 17 C.F.R. § 240.13a–14 (requiring certification by the "principal executive and principle financial officer of the issuer" for 10-Qs and 10-Ks). Consequently, Sarbanes-Oxley certifications are "statement[s] in . . . [a] report . . . filed pursuant to" the SEA. Thus, chief executive officers or chief financial officers, such as Defendants Angel and Blachar, may be held liable for false or misleading statements in Sarbanes-Oxley certifications. Having determined that liability is possible for statements made in Sarbanes-Oxley certifications, the Court now turns to the question of whether Plaintiffs have met the required pleading standards.

    i. Material Misrepresentation or Omission

Defendant argues that Plaintiffs have failed to meet the specificity standard by including the statements in controversy as block quotes within the complaint. In support, Defendant cites to several district court decisions within this Circuit. The Court finds the cases cited by Defendant to be distinguishable. While Plaintiffs did include the certification statements in a block quote, certain portions of the quote were bolded and italicized. (*See, e.g.*, ECF No. 52 at ¶ 65.) Immediately following the block quote, Plaintiffs explained why the indicated material was alleged to be misleading. (*See, e.g.*, *id.* at ¶ 66.) Thus, the instant case is not one in which the plaintiffs highlighted passages but did not "indicate exactly what is false within the highlighted passage." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000); *see also In re Cisco Sys. Inc. Sec. Litig.*, No. C-11-1568 SBA, 2013 WL 1402788, at *6 (N.D. Cal. Mar. 29, 2013) (finding

"no meaningful effort by Plaintiffs to link these statements to any of the voluminous facts alleged throughout the Amended Complaint[]"). Accordingly, the Court finds that Plaintiffs have "specif[ied] each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

    ii. Scienter

For a claim to be plausible under the heightened pleading standards of Rule 9(b) and the PLSRA, a plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017). That is, "although facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness." *In re Silicon Graphics*, 183 F.3d at 974.

Here, the portions of the amended complaint regarding the Sarbanes-Oxley certifications do not—on their own—provide factual support sufficient to discern a strong inference of deliberate recklessness or conscious misconduct. The paragraphs following the certifications do not address scienter at all. Paragraph 109 alleges actual knowledge or, in the alternative, reckless disregard for the truth, but those are legal conclusions that the Court is not required to accept. *Iqbal*, 556 U.S. at 678. The same is true for Paragraph 12, where Plaintiffs state that "[b]ecause of their positions with the Company, and their access to material information available to them but not to the public . . . the Individual Defendants knew that the adverse facts" were omitted or misrepresented. Paragraph 110 states that "[i]nformation showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control," which provides

sufficient allegation of an element under Rule 9(b) but does not provide the factual support required by the PLSRA.

As noted above, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the allegations of Plaintiffs do not satisfy the PLSRA requirements that "the complaint shall . . . state with particularity *facts* giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2) (emphasis added); s*ee Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008) (finding that "Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter" in the absence of evidence showing the signing official was "severely reckless in certifying the accuracy of the financial statements") (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). Thus, the requirements of the PLSRA are not met and the Sarbanes-Oxley certifications do not—on their own—provide sufficient evidence of scienter.

*b. Ormat's Financial Reports*

Defendant contends that Plaintiffs' complaint fails to identify material misrepresentations with required particularity and also fails to demonstrate required scienter in regard to the 2017 2Q 10-Q, 2017 3Q 10-Q, and the 2017 10-K.

i. Material Misrepresentation or Omission

As with the Sarbanes-Oxley certifications, the amended complaint provides the statement alleged to be unlawful, identification of the particular statement at controversy, and an explanation as to why the indicated material is alleged to be unlawful. Therefore, Defendant's argument that Plaintiffs have failed to meet the specificity standard by including the statements in controversy as block quotes within the complaint is rejected.

///

ii. Scienter

The amended complaint addresses scienter in three different locations: Paragraph 12, Paragraphs 109–110, and the paragraphs following each particularized statement. As noted above, Paragraphs 12 and 109–110 provide perfunctory legal conclusions without evidential support, therefore do not satisfy the pleading standards of the PLSRA. Paragraphs 62 and 68, following the 2017 2Q and 3Q 10-Qs, respectively, do not address scienter at all.[3] Paragraph 64, following the 2017 2Q 10-Q, comes the closest to satisfying pleading requirements in its allegation that "Defendants did not have any reasonable basis to conclude that it was more likely than not that the Company would generate enough taxable income to support the release of $62 million of valuation allowance." Yet, this is still more of a legal conclusion than proffer of factual support. For the 2017 10-K, Paragraph 73, which states that Defendants "tried to reassure investors by misleadingly downplaying the severity and significance of this material weakness," presents a possible motive, but no factual evidence in support. Accordingly, the portions of the amended complaint regarding the financial reports filed by Defendants do not—on their own—provide factual support sufficient to discern a strong inference of deliberate recklessness or conscious misconduct as required by the PLSRA.

c. *Holistic Review of Scienter*

In analyzing a motion to dismiss regarding alleged securities fraud, it is important to keep in mind that "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 324 (2007). The key

---

[3] Although appearing after the 2017 2Q 10-Q excerpt, Paragraph 63 discusses CW1's allegations, which are not specific to the 10-Q and are therefore more appropriately analyzed in the holistic review.

phrase in that standard is "at least as," meaning that the heightened burden of 15 U.S.C. § 78u-4(b) and Fed. R. Civ. P. 9(b) do not require a plaintiff to show the existence of scienter to be probable or more likely than not. Instead, the pleading must merely demonstrate "a claim to relief plausible on its face," *Twombly*, 550 U.S. at 570, and that any other plausible explanations for the controversial conduct are not more compelling than the explanation proffered in the complaint. However, prior to conducting the holistic analysis, the Court must review evidence not specifically addressed in the segmented analysis above.

i. CW1's Representations

The Ninth Circuit applies a two-part test in analyzing statements from confidential witnesses in PLSRA litigation: "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Zucco*, 552 U.S. at 995. "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.*

Here, CW1 is identified as a former employee who "worked at Ormat from November 2004 to October 2015 in various high-ranking Finance positions." (ECF No. 52 at ¶ 63 n.3.) Plaintiffs further state that CW1 reported to Defendant Blachar from April 2013 until CW1 left Ormat. (*Id.*) Plaintiffs do not provide CW1's qualifications, matters of expertise, matters on which CW1 personally worked on while at Ormat, or other potentially relevant information. While Plaintiffs allege that CW1 had some sort of access to Ormat's financial models, they do not provide any information which would allow the Court to determine the extent of CW1's personal familiarity with those models. Thus, the information provided is insufficient to determine CW1's "reliability and personal knowledge." *See Zucco*, 552 F.2d at 995 (finding insufficient reliability where, in the absence of documentary evidence, the complaint fails "to provide an adequate basis

for determining that the witness[] in question ha[s] personal knowledge of the events . . . reported").

Furthermore, even if CW1 was deemed sufficiently reliable, the statements attributed are not themselves indicative of scienter. Plaintiffs cite to CW1 twice in the complaint: In Paragraph 63, the complaint notes that "according to CW1, as early as 2010 or 2011, the Company's financial models consistently showed that Ormat would not be able to use its federal tax credits before they expired, because the Company would not generate enough taxable income." Thus, Plaintiffs allege, "Ormat ultimately improperly recorded deferred tax assets that the Company's financial models had consistently shown it would not be able to use." (*Id.*) Paragraph 84 asserts virtually the same proposition, noting that "according to CW1, Ormat knew as far back as 2011 that financial models showed that it was more likely than not that Ormat would not be able to use the accumulated tax credits before they expired." (internal emphasis omitted).

The issue with those statements is that, whether CW1's allegations are accurate or not, CW1's experience occurred entirely outside of the class period. Further, any financial models developed during CW1's period of employment were created prior to the Viridity acquisition announced on January 3, 2017 and the receipt of final approval for the SCPPA PPA announced June 1, 2017. These events were of significant magnitude to Defendant's financials, so much so that they were the attributed catalyst that caused Defendant to "re-evaluate[] its position with respect to a portion of the unrepatriated earnings . . . [and] determine[] that it can no longer maintain the permanent reinvestment position with respect to a portion of . . . unrepatriated earnings which will be repatriated." (*Id.* at ¶ 60.) A change in the company's financial position such as this must, of necessity, result in recalculation of financial models—rendering CW1's personal knowledge obsolete and therefore insufficient to demonstrate scienter.

///

ii. Effect of the Restatements

Defendant cites the Ninth Circuit on multiple occasions for the proposition that "the mere publication of a restatement is not enough to create a strong inference of scienter." (*See, e.g.*, ECF No. 59 at 9:12–13; ECF No. 69 at 4:6–8.) However, it worth noting that the Ninth Circuit preceded that exact statement with the phrase "in general," *Zucco*, 552 F.3d at 1000, indicating there is no per se rule that restatements are insufficient to demonstrate scienter. Indeed, the Ninth Circuit has detailed several exceptions to the general rule. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784–86 (9th Cir. 2008) (summarizing exceptions). Of potential relevance here is the exception where "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786. Furthermore, even if not sufficient on their own, "significant GAAP violations . . . may provide powerful indirect evidence of scienter." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000). Thus, the contents of a restatement may be used in an analysis of scienter and a review of Defendant's other objections is necessary.

Defendant provides several reasons why a holistic analysis should not find sufficient proof of scienter. First, Defendant argues that the complexity of the underlying GAAP rules counsel against a finding of scienter. While this may be true of calculating the actual amounts of the financials, it is not necessarily true for all parts of GAAP compliance. For instance, ASC 740-10-30-5 provides that "[d]eferred taxes shall be determined separately for each tax-paying component (an individual entity or group of entities that is consolidated for tax purposes) in each tax jurisdiction." ASC 740-10-45-6 provides that "an entity shall not offset deferred tax liabilities and assets attributable to different tax-paying components of the entity or to different tax jurisdictions."

These are bright-line rules—a far cry from complicated financial calculations.[4] Consequently, a reasonable person could conceivably find Plaintiffs' argument that the impermissible netting of deferred assets across jurisdictions was done to offset the damaging news of repatriation taxes to be at least as compelling as Defendant's argument that the error occurred due to the complexity of financial calculations and the inherent need for estimation and prediction in making those calculations.[5]

Next, Defendant argues that scienter is unlikely because the errors in calculation resulted in both overstatements and understatements of net income during the relevant quarters. This vacillation, Defendant maintains, works to negate an inference of scienter. However, as Plaintiffs note, "a scheme to inflate stock prices need not necessarily take the form of crudely overstating net income . . . every single quarter." (ECF No. 68 at 17:16–17.) It is not uncommon for those participating in a fraudulent enterprise to attempt to disguise their activities by ensuring that the enterprise does not appear improbably successful.[6] Thus, vacillation itself is not indicative of scienter one way or another.

Further, Defendant argues that "the alleged misstatements are inconsistent with pleading a scheme to defraud [as] [i]nvestors often look to EBITDA in assessing the value of a company." (ECF No. 59 at 12:17.) Plaintiffs counter this argument with the note that "[i]nvestors as well as

---

[4] Moreover, the argument that compliance with GAAP requires complex calculations is unavailing on its own right. Although complexity or lack of guidance may be instructive as to whether an error is made recklessly, negligently, or reasonably in light of applicable circumstances, it also speaks to the requisite thoroughness and redundancy in the applicable internal controls. That is, a more complex issue, such as cross-jurisdictional future tax projections, may be more likely to suffer from unintended error, but that same increase in probability indicates the need for more intricate internal control mechanisms.

[5] Admittedly, Plaintiffs' argument would likely be insufficient, on its own, to find scienter—but there is enough potential merit to include it within the holistic analysis.

[6] This, of course, is merely an example—not a determination or suggestion of what actually occurred.

analysts care about a wide range of topics besides quarterly net income and EBITDA." (ECF No. 68 at 17:18–19.) Indeed, the impropriety of focusing solely on EBITDA is demonstrated by the fact that Ormat's stock price dropped sharply following the issuance of its restatements—despite the fact that the miscalculations had no effect on EBITDA.[7]

Finally, Defendant argues that the disclosure of internal control weaknesses and subsequent restatements negate scienter. In support, Defendant cites *In re Watchguard Sec. Litig.*, No. C05-678LR, 2006 WL 2927663, at *8 (W.D. Wash. Oct. 12, 2006) ("Disclosing its auditors' activities to the investing public and admitting that the auditors might discover material inadequacies in WatchGuard's financial controls is hardly consistent with an intent to mislead investors."). However, the allegation in that case was that the defendants "deliberately ignored" the issues with internal controls. *Id.* Here, the allegation is that Defendant purposefully issued misleading statements to reassure investors. This allegation finds theoretical support in the language of the disclosures, which state that "the deficiency resulted in immaterial adjustments . . . but did not result in a material misstatement . . . nor does it require a restatement or change" of prior financial reports. (ECF No. 52 at ¶ 73; *see also id.* at ¶ 74 ("[The identification of a material weakness] does not affect our opinion on [prior] consolidated financial statements.").)

iii. Alleged Motive

Defendant argues that Plaintiffs have not alleged any motive for fraud. Specifically, Defendant Ormat notes that neither Defendant Angel nor Defendant Blachar sold Ormat stock during the class period. Yet, the complaint does allege at least one possible motive: to offset

---

[7] Evidence of a fall in stock price following the events at controversy does not conclusively demonstrate the merit of Plaintiffs' arguments, as that would be judgment by impermissible hindsight. However, such occurrences may provide insight as to whether an investor could potentially consider such information relevant.

investor anxiety and "downplay the significance of the identified material weakness." (ECF No. 52 at ¶ 94; *see also id.* at ¶¶ 73, 86.) In fact, Defendant's disclosure itself noted that the material weakness, "if not timely remediated, may adversely affect the accuracy and reliability of our financial statements, and our reputation, business and the price of our common stock, as well as lead to a loss of investor confidence in us." (*Id.* at ¶ 72.) Furthermore, although Defendants Angel and Blachar did not sell any Ormat stock during the class period, Plaintiffs note that Defendant Angel's executive salary went from $1,356,435 in 2017 to $7,984,551 in 2018,[8] despite the need for issuing significant restatements. (*Id.* at ¶ 11.) Consequently, although motive and opportunity, "without more, is not enough to establish a cogent and compelling inference of scienter," *Zucco*, 552 F.3d at 999, the allegations of such may be considered in the holistic analysis.

iv. Holistic Analysis

In *Zucco*, the Ninth Circuit found the combined allegations to be less compelling than the "plausible alternative inference . . . [that] there was no specific intent to fabricate the accounting misstatements at issue," and it was more likely that a smaller company "was simply overwhelmed with integrating a large new division into its existing business." 552 F.3d at 1007. Unlike Defendant in this case, however, the *Zucco* defendant company was a "fledgling . . . corporation," *id.* at 987, whose errors resulted in a miscalculation of approximately $2.7 million. *Id.* at 988. Here, Defendant is a well-established global corporation with a 2018 annual revenue of over $7 billion and the error of miscalculation resulted in an overstatement of $23.1 million in net income for 2017. Considering the stature and experience of Defendant in maintaining a global corporate

---

[8] On the other hand, Defendant Blachar's executive compensation dropped from $2,457,197 in 2017 to $573,772 in 2018.

entity, the Court finds it unlikely Defendant was "overwhelmed" by the need for new financial calculations.

Therefore, the primary competing inferences in this case appear to be that either (1) Defendant improperly applied complicated GAAP principles in a manner negligent at best and dutifully disclosed the errors and corrections or (2) Defendant, concerned over the possible impact of significant new tax liability due to its revamped business plan, issued misstatements designed to reassure investors and prevent a drop in corporate assets during the changeover. Taking the complaint as a whole, the Court finds that Plaintiffs have provided sufficient cumulative evidence to create an inference "at least as compelling as [the] opposing inference." *Tellabs*, 551 U.S. at 324. Accordingly, the Court finds that Plaintiffs' amended complaint satisfies the requirements of the PLSRA and Rule 9(b) and may therefore proceed on the Rule 10b-5 claim.

### *2. Rule 20(a) Claims*

15 U.S.C. § 78t(a) ("Section 20(a)") provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

While the term "controlling person" has not been precisely defined by either statute or caselaw, *see* Ralph C. Ferrara & Diane Sanger, *Derivative Liability in Securities Law: Controlling Person Liability, Respondeat Superior, and Aiding and Abetting*, 40 Wash. & Lee L. Rev. 1007, 1009–11 (1983) (discussing the difficulty of defining "controlling person" and various approaches taken by courts), the Ninth Circuit has held that one permissible definition is where "the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057,

1065 (9th Cir. 2000). Nonetheless, "in order to make out a prima facie case, it is not necessary to show actual participation or the exercise of power," but merely to provide sufficient evidence of "the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Id.*

Here, Defendants Angel and Blachar are identified as the CEO and CFO, respectively, of Defendant Ormat, and alleged to "possess[] the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications." (ECF No. 52 at ¶ 12.) Further, Defendants Angel and Blachar, due to their position in the corporate structure, are alleged to have "access to material information available to them but not to the public." (*Id.*) These allegations and facts are sufficient to provide a prima facie argument that Defendants Angel and Blachar are controlling persons for the purposes of Section 20(a) and may therefore be found liable for Rule 10b-5 violations in the absence of a good faith defense.

*3. Israeli Law Claims*

The parties agree that Israeli law applies United States securities law to determine liability in securities litigation regarding dual-listed corporations (that is, corporations which are listed and traded on both the American and Israeli stock markets). Review of the Israeli cases provided confirm this proposition. *See* CA 8737/17 *Cohen v. Tower Semiconductor Ltd.* (2018) (affirming decision of lower courts to apply U.S. securities law to dual-listed corporations). Accordingly, the claims under Israeli law may proceed as their resolution is dependent upon the resolution of the Rule 10b-5 and 20(a) claims.

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 59) is DENIED.

IT IS SO ORDERED.

Dated this 6th day of December, 2019.

                                                                     _____
                                                                         ROBERT C. JONES
                                                                  United States District Judge