ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com
egottlieb@pomlaw.com

*Attorneys for Lead Plaintiff*
*Phoenix Insurance Company Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MAC COSTAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ORMAT TECHNOLOGIES, INC., ISAAC ANGEL, and DORON BLACHAR,<br><br>Defendants. | No. 3:18-cv-00271-RCJ-WGC<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S CONSENTED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

## LEAD PLAINTIFF'S CONSENTED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Lead Plaintiff Phoenix Insurance Company Ltd. on behalf of itself and all members of the proposed Settlement Class (defined below), hereby respectfully moves this Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated June 8, 2020 (the "Stipulation"); (2) preliminarily certifying the Settlement Class (as defined below); (3) appointing Strategic Claims Services as the Claims Administrator; (4) appointing Lead Plaintiff as Class Representative and Lead Counsel, Pomerantz LLP, as Class Counsel; (5) approving the proposed form and manner of disseminating notice to the Settlement Class; (6) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiff's motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Lead Plaintiff's service award request; (7) setting a date for the Final Approval Hearing (defined below) at which the Court will consider the final approval of the settlement and entry of the proposed Final Judgment, the Plan of Allocation of settlement proceeds, Lead Counsel's application for an award of attorneys' fees and expenses, and Lead Plaintiff's service award request; and (8) granting such other and further relief as may be required. Plaintiff will also separately move for leave to file under seal a Confidential Rider to the Stipulation, pursuant to L.R. IA 10-5 as to Exhibit 5 to this Motion.

This Motion is based on the following memorandum of points and authorities and accompanying declaration of Murielle J. Steven Walsh (the "Declaration") and the exhibits attached thereto, including the Stipulation and its accompanying exhibits (filed herewith as Ex. 1) and the accompanying [Proposed] Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (filed herewith as Ex. 2), the Court's file in this action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

LEAD PLAINTIFF'S CONSENTED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT ................................................................ i

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ........ 2
       A.    Plaintiff's Claims and Allegations ............................................................ 2
       B.    Procedural History ..................................................................................... 3
       C.    Mediation Efforts and Settlement Negotiation ......................................... 4

III.   THE PROPOSED SETTLEMENT ..................................................................... 4
       A.    Settlement Class Definition ....................................................................... 4
       B.    Monetary Consideration and Plan of Allocation ...................................... 4
       C.    Notice to Class Members ........................................................................... 5
       D.    Release Provisions ..................................................................................... 6
       E.    Attorneys' Fees and Reimbursement of Expenses and Award to Plaintiff ............ 6
       F.    The Court's Continuing Jurisdiction ......................................................... 6

IV.    PRELIMINARY APPROVAL IS APPROPRIATE ........................................... 6
       A.    Standards for Preliminary Approval and The Settlement Approval Process ........ 6
       B.    Lead Plaintiff and Lead Counsel Adequately Represented the Class ....... 9
       C.    The Settlement Resulted from Good Faith, Arm's Length, Non-Collusive Negotiation Conducted by Well-Informed and Experienced Counsel ...... 9
       D.    Risks, Expense, Complexity and Likely Duration of Further Litigation ............ 10
       E.    The Settlement Amount Falls Within the Range for Approval and Has No "Obvious Deficiencies" ........ 13
       F.    Other Factors Established by Rule 23(e)(2)(c) ....................................... 14
       G.    The Settlement Treats Class Members Equitably Relative To Each Other .......... 16

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................. 17
       A.    The Settlement Class satisfies the requirements of Rule 23(a)(1)-(4) .............. 17
       B.    The Settlement Class satisfies the requirements of Rule 23(b)(3) ........ 20
       C.    The Court Should appoint Lead Counsel as Class Counsel .................... 22

VI.    THE FORM AND METHOD OF NOTICE SHOULD BE APPROVED .......... 22

VII.   PROPOSED SCHEDULE ................................................................................. 23

VIII.  CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................19, 20, 21

*In re Applied Micro Circuits Corp. Sec. Litig.*,
  No. 01CV0649 KAJB, 2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10,
  2003) ........................................................................................................................17

*Bellows v. NCO Financial Sys., Inc.*,
  No. 3:07-CV-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec.
  2, 2008) ....................................................................................................................10

*Booth v. Strategic Realty Tr., Inc.*,
  No. 13-CV-04921-JST, 2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28,
  2015) ........................................................................................................................21

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
  No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25,
  2016) ........................................................................................................................16

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ....................................................................................................8

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20,
  2015) ........................................................................................................................23

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001) ..................................................................................13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................................8

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11,
  2016) ........................................................................................................................14

*Ferrell v. Buckingham Prop. Mgmt.*,
  No. 1:19-cv-00332-LJO-SAB, 2020 U.S. Dist. LEXIS 9919 (E.D. Cal. Jan.
  17, 2020) .........................................................................................................7, 8, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Flag Telecom Holdings*,
  No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y.
  Nov. 5, 2010) ..................................................................................................11, 12

*Gudimetla v. Ambow Educ. Holding*,
  No. 12-cv-5062 PSG, 2014 U.S. Dist. LEXIS 195147 (C.D. Cal. Dec. 2, 2014).............13, 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................8, 18, 19, 21

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...........................................................................18

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ...........................................................................17

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4,
  2018) .........................................................................................................15

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10,
  2005) .........................................................................................................13

*Howell v. JBI, Inc.*,
  298 F.R.D. 649 (D. Nev. 2014)...................................................................17, 21

*In re Illumina, Inc. Sec. Litig.*,
  No. 3:16-cv-3044-L-MSB, 2019 U.S. Dist. LEXIS 217596 (S.D. Cal. Dec. 18,
  2019) ............................................................................................... *passim*

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009)...................................................................18, 19

*Katz v. China Century Dragon Media, Inc.*,
  No. CV11-02769 JAK, 2013 U.S. Dist. LEXIS 189987 (C.D. Cal. Oct. 10,
  2013) .........................................................................................................10

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .............................................................................8

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009).......................................................................19

*Mauss v. NuVasive, Inc.*,
  No. 13cv2005 JM (JLB), 2017 U.S. Dist. LEXIS 41894 (S.D. Cal. Mar. 22,
  2017) .........................................................................................................20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................................23

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ........................................................................21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F*,
  688 F.2d 615 (9th Cir. 1982) ...............................................................................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...............................................................................16

*In re Ormat Technologies, Inc. Derivative Litigation*,
  No. 3:18-cv-439-RCJ-WGC (D. Nev. Sept. 11, 2018) .........................................6

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................9

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ........................................................................23

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................8

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019) .................................................................18, 20, 21

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................7

*Szymborski v. Ormat Techs., Inc.*,
  No. 3:10-CV-132-RCJ, 2012 U.S. Dist. LEXIS 148545 (D. Nev. Oct. 16,
  2012) ......................................................................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 165344 (N.D. Cal. June 13, 2011) ......................9

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-cv-01160-JST, 2017 U.S. Dist. LEXIS 174353 (N.D. Cal. Oct. 20,
  2017) ....................................................................................................................15

*Valentino v. Carter-Wallace Inc.*,
  97 F.3d 1227 (9th Cir. 1986) .......................................................................................20

*Vinh Nguyen v. Radient Pharm. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) .................................................................................17

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. 11-cv-00406, 2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ..................16, 17

*West v. Circle K Stores, Inc.*,
  No. 04-cv-0438-WBS-GGH, 2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June
  12, 2006) .........................................................................................................................7

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27,
  2015) ....................................................................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) .....................................................................................................22

Private Securities Litigation Reform Act ...........................................................................22

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2019 Review and
  Analysis* (Mar. 11, 2020) ..............................................................................................14

*Manual for Complex Litigation, Fourth* § 21.632 (FJC 2004) ...........................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff Phoenix Insurance Company Ltd. ("Lead Plaintiff" or "Plaintiff"), on behalf of itself and the Settlement Class,[1] is pleased to present, for the Court's preliminary approval, a $3,750,000 cash settlement (the "Settlement Amount") resolving all claims in this Action (the "Settlement"), as set forth in the Stipulation dated June 8, 2020.[2]

Plaintiff respectfully submits this Memorandum in support of its consented to motion seeking that the Court initiate the approval process by entering an order, substantially in the form filed herewith as Exhibit 2 (the "Preliminary Approval Order"), preliminarily approving the proposed Settlement as set forth in the Stipulation, preliminarily certifying the Settlement Class, approving the notice and administration program and setting relevant deadlines, and scheduling a date for a hearing (the "Final Approval Hearing" or "Settlement Hearing") at which the Court will consider the final approval of the settlement and entry of the proposed Final Judgment, the Plan of Allocation of settlement proceeds, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiff's application for a service award.

## I.    INTRODUCTION

Lead Plaintiff has achieved an excellent resolution of this Action. The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $3,750,000 for the benefit of the Settlement Class.

---

[1] The "Settlement Class" or "Class" is defined as all Persons, including those resident in Israel, that purchased or acquired common shares of Ormat on the New York Stock Exchange ("NYSE") and/or on the Tel Aviv Stock Exchange ("TASE"), between August 3, 2017 and May 15, 2018, both dates inclusive (the "Settlement Class Period" or "Class Period"), and were injured thereby. Stip. ¶¶ 2(c), 10. Excluded from the Class are: (1) Defendants and the officers and directors of Ormat (the "Excluded Persons"); (2) the immediate family members of any Excluded Person; (3) the legal representatives, heirs, successors, or assigns of any Excluded Person; (4) any entity in which any Excluded Person has a controlling interest; and (5) any putative Settlement Class Members who exclude themselves by filing a timely and valid exclusion request in accordance with the requirements set forth in the notice. Stip. ¶ 2(c)-(d), (h).

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Murielle J. Steven Walsh (the "Walsh Decl."), which is filed concurrently herewith.

By the time the Settlement was reached, Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of the claims, including the potential limitations on recovery, and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, *inter alia*, a review and analysis of Ormat's public statements, public reports and news articles concerning Ormat, interviews with former employees, and consultations with damages and loss causation experts; (ii) drafted the Consolidated Amended Class Action Complaint (the "Complaint"), based on the investigation; (iii) engaged in contentious motion practice with respect to Defendants' motion to dismiss the Complaint; (iv) drafted and exchanged extensive mediation statements and replies thereto; (vi) participated in a full-day mediation session before mediator Jed D. Melnick, Esq., who has substantial experience in mediating securities fraud class actions, which did not result in a settlement that day; (vii) participated in continued negotiations, facilitated by Mr. Melnick, following the mediation session, resulting in the parties reaching a settlement in principle; and (viii) engaged in negotiations regarding the terms of the Settlement.

The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, in conjunction with a well-respected and experienced mediator. As discussed in greater detail below, Lead Plaintiff and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval, is in the best interests of the putative Class in light of the risks and costs of litigating this Action through trial, and represents a significant recovery within the range of possible approval. As such, this Court should preliminarily approve the Settlement, certify the Settlement Class for settlement purposes only, approve the notice and administration program, and set a date for a Final Approval Hearing.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiff's Claims and Allegations

This is a securities class action brought by investors against Ormat, which is a vertically integrated geothermal energy company, and its CEO and CFO, Isaac Angel and Doron Blachar,

respectively.[3] The Complaint generally alleges that the Defendants unlawfully inflated Ormat's stock price and violated the U.S. federal and Israeli securities laws by issuing materially false and misleading financial statements that improperly recorded millions of dollars of deferred tax assets. The Complaint further alleges that Defendants made materially false and misleading statements regarding the adequacy of Ormat's internal controls. Plaintiff alleges that, as a result of Defendants' false and misleading statements, the price of Ormat's common stock declined and investors were harmed when the truth was revealed through a series of partial corrective disclosures on May 11, 2018 and May 16, 2018.

### B. Procedural History

This action was filed on June 11, 2018 in a complaint alleging violations of the federal securities laws (ECF No. 1). On March 12, 2019, the Court appointed Phoenix Insurance Company Ltd. as lead plaintiff for the proposed class, Pomerantz LLP as lead counsel, and Muehlbauer Law Office, Ltd. as liaison counsel (ECF Nos. 49-50).

The operative Complaint (ECF No. 52) was filed on May 13, 2019. On July 12, 2019, Defendants moved to dismiss the Complaint, arguing that, among other things, the Complaint failed to plead any actionable misstatements with the requisite particularity and failed to plead a strong inference of scienter (ECF No. 59). Plaintiff filed an opposition to that dismissal motion on August 26, 2019 (ECF No. 68), to which Defendants replied on September 25, 2019 (ECF No. 69). On December 6, 2019, the Court denied Defendants' motion to dismiss (ECF No. 76). Defendants filed an answer to the Complaint on January 8, 2020 (ECF No. 79). The Parties submitted a proposed Discovery Plan and Scheduling order on February 24, 2020 (ECF No. 80), which the Court approved on February 25, 2020 (ECF No. 81).

---

[3] Ormat, Angel, and Blachar are collectively referred to as "Defendants." Defendants and Plaintiff are referred to as the "Parties."

### C.    Mediation Efforts and Settlement Negotiation

Lead Counsel and Defendants thereafter engaged in extensive settlement negotiations, while Plaintiff simultaneously prepared to pursue discovery. On March 11, 2020, Lead Counsel and Defendants' counsel participated in a full-day mediation before experienced mediator Jed D. Melnick, Esq., of JAMS.

Prior to the mediation session, the Parties exchanged among themselves and submitted to the mediator detailed mediation statements and exhibits, and replies thereto, which addressed the issues of both liability and damages. Although the Parties did not reach an agreement to settle the action during that mediation session, they continued their dialog following that session, with Mr. Melnick's assistance and supervision. Those discussions culminated in the Parties reaching an agreement in principle to settle the Action, which was memorialized in a memorandum of understanding (the "MOU") executed on March 23, 2020. The Parties subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation.

## III.    THE PROPOSED SETTLEMENT

Below is an overview of the Settlement's key terms, which the Stipulation sets forth in greater detail.

### A.    Settlement Class Definition

The Settlement Class includes all Persons, including Israeli residents, who purchased or acquired shares of Ormat between August 3, 2017 and May 15, 2018, inclusive, on the NYSE and/or TASE. *See* Stip. ¶¶ 2(c), 10; *supra* n.1. Those excluded from the Class include Defendants and Ormat's officers and directors, and any Class Members who exclude themselves in accordance with the requirements set forth in the notice. *See* Stip. ¶ 2(c)-(d), (h); *supra* n.1.

### B.    Monetary Consideration and Plan of Allocation

Under the proposed Settlement, the Parties have agreed that Defendants will cause a cash payment of $3.75 million to be paid into an interest-bearing escrow account maintained by

Huntington National Bank. That amount will be deposited into the Settlement Fund (as defined in ¶ 3 of the Stip.) within thirty days of Preliminary Court Approval.

Lead Counsel believes that this immediate cash recovery provides a substantial benefit to the Settlement Class and has considered issues of liability and damages in determining an appropriate proposed Plan of Allocation. Lead Counsel did not favor or consider the particular trading history of the Plaintiff or of any other individual member of the Settlement Class in crafting this plan. Lead Counsel consulted with a damages expert experienced in the area of class action securities fraud litigation when developing the proposed Plan of Allocation.

### C.    Notice to Class Members

The proposed Notice informs Settlement Class Members of the Settlement terms and affords an opportunity to request exclusion from the Settlement Class or to object to the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses. The Notice, which will also be translated into Hebrew, will be mailed to the address of each Settlement Class Member (as identified in Ormat's transfer records), as well as to institutional investors and banks and brokerage firms that usually maintain custodial accounts. The Publication Notice of Pendency and Proposed Class-Action Settlement (the "Publication Notice" or "Summary Notice"), which will also be translated into Hebrew, will be published on a national business newswire and two Israeli publications, including Israel's leading financial publication and second largest paper.[4] A copy of the Notice, Publication Notice, Proof of Claim, including Hebrew Translations of those documents, and Stipulation will also be posted on a website maintained by the Claims Administrator.[5]

---

[4] The Notice and Proof of Claim and Release form ("Proof of Claim") and Publication Notice, are attached to the Stipulation as Exhibits A and C, and are Exhibits 1-A and 1-C to the Walsh Declaration. Note that these documents currently contain blanks for dates to be ordered by the Court, which will be filled in with the appropriate dates prior to dissemination.

[5] Additional detail regarding notice to class members is included below in Section VI.

### D.    Release Provisions

As more fully set forth in ¶¶ 2, 4-5, and 23 of the Stipulation, (1) the Releasing Parties (as defined in ¶ 2(s) of the Stip.) fully release the Released Claims (as defined in ¶¶ 2(q), of the Stip.), including Unknown Claims (as defined in ¶ 2(x) of the Stip.), against the Released Parties (as defined in ¶ 2(r) of the Stip.) (Stip. ¶ 4); (2) the Releasing Parties agree to refrain from commencing or prosecuting any claim arising from the purchase or sale of Ormat securities during the Class Period (*see id*. ¶ 5); and (3) "every Person is … barred and enjoined from filing, … prosecuting or maintaining … any claim … or other actions based upon, relating to, or arising out of the Released Claims and/or the transactions and occurrences referred to in … any [] pleadings filed in this Action … against any of the Released Parties" (*id*. ¶ 23). The Settlement does not release any of the derivative claims in the action captioned *In re Ormat Technologies, Inc. Derivative Litigation*, No. 3:18-cv-439-RCJ-WGC (D. Nev. Sept. 11, 2018). Stip. ¶ 2(q).

### E.    Attorneys' Fees and Reimbursement of Expenses and Award to Plaintiff

Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed one-third (or about 33.33%) of the total Settlement Fund (or approximately $1,250,000). Lead Counsel will also apply to the Court for a reimbursement of its reasonable expenses incurred through the Litigation (not to exceed $115,000), as well as a service award to Lead Plaintiff to compensate it for its time and contributions to the litigation (not to exceed $20,000).

### F.    The Court's Continuing Jurisdiction

If the Court grants final approval of the proposed Settlement, the parties will request that the Court enter a final judgment of dismissal, which is substantially in the form of Exhibit D to the Stipulation (attached to the Walsh Decl. as Ex. 3). *See* Stip. ¶¶ 7-8. The Court will retain jurisdiction with respect to the implementing and enforcing the Settlement's terms. *See id*. ¶ 34.

## IV.    PRELIMINARY APPROVAL IS APPROPRIATE

### A.    Standards for Preliminary Approval and The Settlement Approval Process

Rule 23(e) requires judicial approval before a class action is dismissed or settled, and that notice of any proposed dismissal or settlement be given in the manner directed by the Court. Fed.

R. Civ. P. 23(e). In order to approve a proposed class action settlement, the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties[] show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).[6] Preliminary approval (followed by notice to the class) is typically the first stage of a two-stage process before the settlement is finally approved. *See e.g.*, *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 U.S. Dist. LEXIS 9919, at *23-24 (E.D. Cal. Jan. 17, 2020); *West v. Circle K Stores, Inc.*, No. 04-cv-0438-WBS-GGH, 2006 U.S. Dist. LEXIS 42074, at *4-6 (E.D. Cal. June 12, 2006).

"[P]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, [4] and falls within the range of possible approval." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *32 (N.D. Cal. Oct. 27, 2015); *see In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-3044-L-MSB, 2019 U.S. Dist. LEXIS 217596, at *14-15 (S.D. Cal. Dec. 18, 2019) (same). Rule 23(e)(2), which governs final approval, provides that a Court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class…; (iii) the terms of any proposed award of attorney's fees…; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

---

[6] If, as here, the parties have reached an agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Fed. R. Civ. P. 23(e)(2).[7]

The Ninth Circuit has a "strong judicial policy" favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The court's responsibility at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *In re Illumina*, 2019 U.S. Dist. LEXIS 217596, at *14 (quoting *Manual for Complex Litigation, Fourth* § 21.632 (FJC 2004)). In evaluating a proposed class-action settlement, courts in the Ninth Circuit "put a good deal of stock in [settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Supreme Court has cautioned that courts should "not decide the merits of the case or resolve unsettled legal questions" when reviewing a proposed class settlement. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). "The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole." *Ferrell*, 2020 U.S. Dist. LEXIS 9919, at *10 (citing *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012)).

Through this motion, and for the reasons set forth herein, Plaintiff requests that the Court take the first step in the approval process—namely, (1) grant preliminary approval of the Settlement, (2) approve of the Parties' requested form, manner and schedule for notice, final approval, and related events because they will fairly apprise Class Members of the Settlement's terms and provide them adequate opportunity to file claims, submit objections to, or exclude themselves from, the Settlement, and (3) certify the class for purposes of settlement.[8]

---

[7] At the final approval stage, the Court will also be asked to review the following factors: "[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ, 2012 U.S. Dist. LEXIS 148545, at *5-6 (D. Nev. Oct. 16, 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

[8] While Plaintiff intends to make a fulsome showing under Rule 23(e)(2) and the other factors identified by the Ninth Circuit in advance of the Settlement Hearing, a preliminary review of the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Lead Plaintiff and Lead Counsel Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have adequately represented the interests of the Class for purposes of Rule 23(e)(2)(A). This is because, throughout the litigation of the Action, and in connection with the Settlement, the interests of Plaintiff and Lead Counsel have been fully aligned with the Class, and Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 165344, at *96 n.4, *100-01 (N.D. Cal. June 13, 2011). Lead Plaintiff's interest in obtaining the largest possible recovery is also aligned with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Further, Lead Plaintiff has significantly contributed to the Action by (1) overseeing the litigation and communicating with counsel, (2) reviewing drafts of case materials, and (3) participating in settlement discussions with Lead Counsel.

Moreover, Lead Counsel adequately represented the Class by: (1) skillfully litigating the Action, including drafting the comprehensive amended complaint and successfully defeating Defendants' motion to dismiss; (2) drafting detailed mediation submissions that set forth the facts of the case and analyzed the strengths of the Action and potential damages; (3) engaging in a full-day mediation session overseen by Mr. Melnick, and negotiating the terms of the proposed Settlement; and (4) drafting the Stipulation and exhibits.

**C.    The Settlement Resulted from Good Faith, Arm's Length, Non-Collusive Negotiation Conducted by Well-Informed and Experienced Counsel**

Here, the Parties' negotiations culminating in the Settlement were "the product of serious, informed, non-collusive negotiations" and at arm's length. *In re Illumina*, 2019 U.S. Dist. LEXIS

Rule 23(e)(2) factors, is helpful at this stage to show that the Settlement merits granting preliminary approval and notice should be disseminated to the Class. *See* Fed. R. Civ. P. 23(e)(1)(A)-(B)(i).

217596, at *14-15; Fed. R. Civ. P. 23(e)(2)(B). The Parties reached the proposed Settlement after substantial discussions, including formal mediation before Mr. Melnick, preceded by the exchange of detailed mediation statements and exhibits, as well as replies. "The assistance of a mediator in negotiating the settlement supports a determination that the settlement was negotiated at arm's length and is non-collusive." *Ferrell*, 2020 U.S. Dist. LEXIS 9919, at *50 n.7 (collecting cases); *In re Illumina*, 2019 U.S. Dist. LEXIS 217596, at *15 ("Settlements reached with the help of a mediator are likely non-collusive" (citation omitted)).

The negotiations resulting in the Settlement were also well-informed. In addition to reviewing the publicly available information concerning Ormat, Lead Counsel retained an investigator to conduct a thorough investigation, including interviewing former Ormat employees. Through the briefing on Defendants' motion to dismiss, and the Parties' mediation submissions, Plaintiff and Lead Counsel acquired "fulsome understandings" of the Parties' respective positions on the issues in the case. *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *34.

Lead Plaintiff and the Settlement Class had the benefit of counsel with extensive experience in securities fraud class action cases and shareholder litigation. Courts have recognized that the opinion of experienced, informed counsel supporting a settlement is entitled to "great weight." *See, e.g., Katz v. China Century Dragon Media, Inc*., No. CV11-02769 JAK (SSx), 2013 U.S. Dist. LEXIS 189987, at *15-16 (C.D. Cal. Oct. 10, 2013) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Bellows v. NCO Financial Sys., Inc*., No. 3:07-CV-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008) (same).

### D. Risks, Expense, Complexity and Likely Duration of Further Litigation

Plaintiff and Lead Counsel believe that the case has merit, and that they will be able to prevail at trial. Nevertheless, Plaintiff and Lead Counsel understand the substantial risks and expenses involved in prosecuting this action further. Achieving class certification and succeeding at summary judgment and trial are in no way assured and posed substantial risks.

For example, in addition to contesting falsity and scienter like they did at the pleading stage, Defendants would likely raise a number of fact-intensive defenses that could not be raised at the pleading stage and pose substantial risks. For example, Plaintiff faced the significant risk that Defendants would prevail in attacking loss causation and damages with the assistance of factual evidence and expert testimony that was not presented (and could not be considered) in their motion to dismiss. As courts in this Circuit have recognized, "in any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial." *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at \*35; *see also In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at \*53-54 (S.D.N.Y. Nov. 5, 2010) ("Even in a less challenging case, [c]alculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion ….").

Here, Defendants would likely argue that Plaintiff will be unable to prove loss causation for at least three reasons. First, Defendants would likely argue that the stock price declines on the alleged corrective disclosure dates—May 11 and 16, 2018—were not statistically significant and that therefore no credible expert could opine that the price declines on those days were attributable to the revelation of the alleged fraud. Second, Defendants would attack Plaintiff's attempt to recover any stock price declines that occurred on May 14, 2018, arguing that the increase in Ormat's share price on May 13, 2018 (the first trading day on the TASE following Ormat's May 11 disclosure) breaks the chain of causation between the May 11 disclosure and the May 14 stock drop on the NYSE. Moreover, the Defendants have claimed that the May 14 decline was caused not by Ormat's disclosures but by the news that a volcanic eruption nearby a major Ormat plant put this asset at risk and raised the market's awareness of the risks faced by geothermal energy companies generally and Ormat specifically. Third, Defendants would argue that, even assuming *arguendo* that the $0.67 decline on May 16 was statistically significant (and it was not, according to Defendants), only a small fraction of that decline was related to Ormat's

announcement of restated valuation allowances, given that academic literature shows that stock prices are only minimally affected by restatements of valuation allowances.

Although Plaintiff had counterarguments to each of Defendants' attacks on loss causation, there were substantial risks that the Court or jury would reject them and thus foreclose or substantially reduce any recovery.[9] The Parties' competing expert testimony on loss causation and damages would inevitably reduce the trial of these issues to a risky "battle of the experts" and the "jury's verdict with respect to [loss causation and] damages would thus depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable." *In re Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *54.

Additionally, continued litigation of this case through fact and expert discovery and trial would be extremely expensive. Because the Individual Defendants (Angel and Blachar), third parties, and relevant documents are located in Israel, there would be a substantial amount of foreign discovery in this case that would lead to additional expenses beyond what is normally incurred in a domestic case. For instance, many of the depositions would likely have to take place overseas and require translation services. Plaintiff would also likely need to translate many documents anticipated to be produced during discovery. Much of the discovery, once produced (and translated), would be extremely voluminous and complex. The ongoing pandemic may have also added time and expense to the discovery process, further delaying resolution of the action.

Formal expert discovery would be no less time-consuming and expensive. The Parties would likely have proffered experts in the fields of accounting, loss causation, price-impact, and damages. The parties would likely draft and respond to *Daubert* motions and summary judgment motions. Thereafter, the Court would need to conduct a trial on any issues that remained in the

---

[9] For example, Plaintiff would have proffered expert testimony supporting the argument that the overall price decline suffered over the corrective event dates (May 11, 14, and 16) is statistically significant at the 95% confidence level. Additionally, Plaintiff would have argued that the May 14 stock price declines are recoverable, including because there is evidence that the May 11 disclosure contributed to the May 14th decline.

case. A trial would have been very complicated for jurors, given the tremendous amount and complexity of fact and expert discovery that would need to be presented.

Moreover, even if Plaintiff were to clear each of these hurdles, it is likely that Defendants would appeal, injecting uncertainty and delay into the Class's recovery. There is a realistic possibility that Plaintiff and the Settlement Class would ultimately receive nothing, but the Settlement provides the Class with a recovery now. This Settlement will spare Plaintiff and the Settlement Class Members the significant delay, risk and expense of continued litigation, thus weighing strongly in favor of preliminarily approving the Settlement.

### E.    The Settlement Amount Falls Within the Range for Approval and Has No "Obvious Deficiencies"

As discussed above, the proposed settlement creates an all cash Settlement Fund of $3,750,000. Plaintiff's consultation with its expert indicated that, based on the allegations in the Complaint, the maximum recoverable class-wide aggregate damages ranged between $62.6 million and $72 million.[10] Compared to this range of damages, the proposed Settlement returns approximately 6% of damages (using the low end of the range), and 5.2% of damages (using the high end of the range). This recovery is within the range of reasonable approval, as even a "small recovery may be fair, reasonable, and adequate." *Gudimetla v. Ambow Educ. Holding*, No. 12-cv-5062 PSG (AJWx), 2014 U.S. Dist. LEXIS 195147, at *17-18 (C.D. Cal. Dec. 2, 2014); *see, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving ~6% recovery of maximum damages (citing *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) (median recovery between 2% to 3% of maximum damage)).[11]

---

[10] The lower end of the range assumes that Plaintiff would not be able to recover any losses attributable to the May 16, 2018 disclosure, as it was arguably not statistically significant.

[11] *See also, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair").

Additionally, according to Cornerstone Research (a leading economic consulting firm that tracks class action securities fraud litigation), between 2010 and 2019, the median settlement as a percentage of damages in cases alleging Rule 10b-5 violations was 4.6%, and, in 2019, the median settlement as a percentage of damages in such cases was 4.8%. *See* Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis*, at 7, 21 (Mar. 11, 2020) (Ex. 4 to Walsh Decl.).

Furthermore, when evaluating the Settlement by examining recovery per damaged share as outlined in the Notice, the estimated average recovery is $0.22 per Plaintiff's estimate of damaged shares of Ormat common stock, or $0.12 per Plaintiff's estimate of damaged shares of Ormat common stock, when the maximum requested attorneys' fees and reimbursement of expenses, service award to Lead Plaintiff, and administrative expenses are deducted from the Settlement Amount. This is a reasonable recovery. *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *39 (N.D. Cal. Feb. 11, 2016) (finding a recovery of $0.11 per damaged share "falls squarely within the settlement amounts approved in other securities class action cases."); *Gudimetla*, 2014 U.S. Dist. LEXIS 195147, at *17-18 (preliminarily approving a settlement where recovery would be only be approximately $0.06 per share on shares originally purchased for $10.00). Accordingly, this Court should conclude that the Settlement Amount weighs in favor of granting preliminary approval.

## F.    Other Factors Established by Rule 23(e)(2)(c)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors support preliminary approval of the Settlement.

First, the method for processing Settlement Class Members' claims and distributing relief to each Authorized Claimant includes well-established, effective procedures for processing

claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (pursuant to the Plan of Allocation), after Court approval. *See, e.g.*, Stip. ¶¶ 14-17.

Second, with respect to the terms of an award of attorneys' fees, Lead Counsel will be applying for a percentage of the common fund fee award in an amount **not to exceed** 1/3 to compensate Lead Counsel for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 1/3 of the Settlement Fund (including interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See, e.g., In re Illumina*, 2019 U.S. Dist. LEXIS 217596, at *21 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value[.]" (citation omitted)).[12]

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential rider to the Stipulation that establishes certain conditions under which Defendants may terminate or modify the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Ormat common stock request exclusion (or "opt out") from the Settlement. *See* Stip. ¶ 9.[13] This type of agreement is standard in securities class action settlements and has

---

[12] Further, approval of the requested attorneys' fees and service award to Lead Plaintiff is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. Stip. ¶ 18(c).

[13] A copy of the Confidential Rider will be supplied to the Court under seal as Exhibit 5 to the Declaration by way of a separate motion. Courts routinely recognize the confidential nature of such agreements and permit them to be filed confidentially under seal. *See, e.g., In re Illumina*, 2019 U.S. Dist. LEXIS 217596, at *26 (finding "the content and confidentiality of the Supplemental Agreement adequate and reasonable under the circumstances"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sept. 4, 2018) (allowing confidential under seal filing of supplemental agreement detailing the conditions under which defendants may terminate the settlement, as "[t]here are compelling reasons to keep this information confidential…"); *Thomas v. MagnaChip Semiconductor Corp*., No. 14-cv-01160-JST, 2017 U.S. Dist. LEXIS 174353, at *16 (N.D. Cal. Oct. 20, 2017) (same); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329 (C.D. Cal. 2016) (collecting cases permitting

1  no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier iQ, Inc., Consumer*

2  *Privacy Litig.*, No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235, at *32 (N.D. Cal. Aug.

3  25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure

4  that an objector cannot try to hijack a settlement in his or her own self-interest," and granting

5  final approval of class action settlement).

6      **G.**    **The Settlement Treats Class Members Equitably Relative To Each Other**

7          Under Rule 23(e)(2)(D) and relevant Ninth Circuit precedent, courts must also evaluate

8  whether the settlement treats class members equitably relative to each other. *See, e.g., Zynga*,

9  2015 U.S. Dist. LEXIS 145728, at *37. "A settlement in a securities class action case can be

10  reasonable if it fairly treats class members by awarding a pro rata share to every Authorized

11  Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative

12  strengths and weaknesses of class members' individual claims and the timing of purchases of the

13  securities at issue." *Id.* at *44 (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406,

14  2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) (quotation marks omitted)). "[C]ourts

15  recognize that an allocation formula need only have a reasonable, rational basis, particularly if

16  recommended by experienced and competent counsel." *Id.* (citation omitted).

17          Although the Court need not approve the Plan of Allocation ("POA") until the final

18  approval hearing, it provides sufficient evidence that the Settlement does not grant preferential

19  treatment to Plaintiff or any Class Member. Here, the POA described in the Notice (Walsh Decl.,

20  Ex. 1-A, at 13-18) has a rational basis and was formulated by Lead Counsel ensuring its fairness

21  and reliability. *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *37. Under the proposed POA,

22  each Authorized Claimant will receive their *pro rata* share of their Recognized Loss depending

25  confidential submissions of opt out thresholds); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving of keeping the contents of confidential opt-out provision confidential for "practical reasons").

1  on when the share was purchased and sold. The Plan of Allocation is similar to other plans that

2  have been approved in other securities class actions. *See, e.g., id.* at \*45-48. (collecting cases).[14]

3  **V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

4      The Parties have stipulated to certification of a class for settlement purposes only. Stip. ¶

5  10. Because the Settlement Class easily meets the requirements of Rule 23(a)(1)-(4) and Rule

6  23(b)(3), the Court should certify the proposed class, and appoint Lead Plaintiff and Lead

7  Counsel as Class Representative and Class Counsel, respectively.

8      **A.     The Settlement Class satisfies the requirements of Rule 23(a)(1)-(4)**

9      The Settlement Class meets each of the Rule 23(a) prerequisites: (1) numerosity, (2)

10  commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

11      ***Numerosity***: The numerosity prerequisite is met if "the class is so numerous that joinder

12  of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability does not mean

13  impossibility, but only the difficulty or inconvenience of joining all members of the class." *In re*

14  *Applied Micro Circuits Corp. Sec. Litig.*, No. 01CV0649 KAJB, 2003 U.S. Dist. LEXIS 14492,

15  at \*7 (S.D. Cal. July 10, 2003) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d

16  909, 913-14 (9th Cir. 1964)). "There is no specific minimum number of plaintiffs asserted to

17  obtain class certification, but a proposed class of at least forty members presumptively satisfies

18  the numerosity requirement." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D.

19  Cal. 2012) (citations omitted).

20      During the Class Period, Ormat had approximately 50 million shares of common stock

21  outstanding. Where, as here, "the exact size of the proposed class is unknown, but general

22  knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Id.*;

23  *see also, e.g., Howell v. JBI, Inc.*, 298 F.R.D. 649, 654–55 (D. Nev. 2014) ("[I]n securities cases,

---

24

25  [14] Nor does the proposed service award of up to $20,000 to Plaintiff provide any basis to find
that the Settlement provides preferential treatment to any Settlement Class member or otherwise
deny preliminary approval of the Settlement. "It is common in class action cases to provide

26  incentive awards to named plaintiffs." *Radient Pharm.*, 2014 U.S. Dist. LEXIS 63312, at \*30.

27

28

when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied."). The Court should thus find numerosity established here.

*Commonality*: To certify a class, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[S]ecurities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74-75 (D.N.J. 2019) (certifying classes alleging violations of the federal and Israeli securities laws); *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement...."). This case presents a number of common questions, including: (1) whether the federal and Israeli securities laws were violated by Defendants' acts as alleged in the Complaint; (2) whether Defendants' Class Period statements misrepresented material facts about Ormat's deferred tax assets and internal controls and were made with scienter; and (3) whether the price of Ormat common stock was artificially inflated because of Defendants' alleged misconduct. "While the amount to which each class member is entitled will differ, the issues described above are common to the proposed Settlement Class, so the commonality requirement is satisfied." *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *27.

*Typicality*: Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive: 'representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *In re Juniper Networks*, 264 F.R.D. at 589 (quoting *Hanlon*, 150 F.3d at 1020). "The test is whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Juniper Networks*, 264 F.R.D. at 589 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Typicality is easily established here. Plaintiff's claims are similar to the claims of the other Settlement Class Members. Defendants' alleged course of conduct described in the Amended Complaint uniformly affected all Settlement Class members, as they each allegedly suffered economic injury from the decline in Ormat's stock price following the corrective disclosures. Plaintiff's claims are typical of the other Settlement Class members because, like all other Settlement Class members, Plaintiff allegedly was injured when the truth about Ormat's deferred tax assets and internal controls was revealed. Further, there is no indication that Plaintiff would face any unique defenses that could make its claims atypical of the Settlement Class. Thus, Rule 23(a)(3)'s typicality requirement is met. *See, e.g., id.* at 589-90; *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 528 (N.D. Cal. 2009) ("Courts have held that where the fraud is only partially revealed … , the [certified] class can contain members who purchased both before and after the alleged corrective disclosure." (collecting cases)).

*Adequacy*: Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement's purpose is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiff and his counsel with other class members; and (2) that the representative party's chosen counsel is qualified, experienced and able with the named plaintiff to vigorously conduct the litigation. *See Hanlon*, 150 F.3d at 1020; *see also* Fed. R. Civ. P. 23(g)(1)(A) (listing factors).

Here, Lead Plaintiff satisfies the adequacy requirement. As discussed above, there is no indication here that Plaintiff's interests will conflict with those of the Settlement Class. Plaintiff purchased Ormat common stock on the NYSE and TASE during the Settlement Class Period and was injured by suffering losses in the same manner as the rest of the Class. Thus, Plaintiff possesses the same interest and suffered the same injury as the rest of the Settlement Class,

which supports its adequacy. *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *28. Therefore, Plaintiff is an adequate representative of the Settlement Class.

As to the adequacy of Plaintiff's counsel, the Court has previously determined that Pomerantz LLP is qualified to represent the class at the lead plaintiff appointment stage. Courts across the country have found Pomerantz LLP to be suitable class counsel in securities class actions. *See, e.g., Papa*, 333 F.R.D. at 76 ("Upon review of the exhibits demonstrating [Pomerantz LLP's] credentials, the Court is satisfied that counsel is qualified to represent the Classes."); *Mauss v. NuVasive, Inc*., No. 13cv2005 JM (JLB), 2017 U.S. Dist. LEXIS 41894, at *7 (S.D. Cal. Mar. 22, 2017) ("The firm resumes submitted by counsel [including Pomerantz LLP] demonstrate their adequacy to represent the class …. [Pomerantz] ha[s] extensive experience in the prosecution of federal securities class actions[,] … [is] knowledgeable about federal securities laws and ha[s] successfully prosecuted hundreds of class actions."). Further, Lead Counsel's experience in litigating complex securities fraud class actions (*see* Firm Resume, Ex. 6 to the Walsh Decl.) and work on this litigation outlined above, show that Lead Counsel satisfies the adequacy requirement. The Court should thus find that this requirement is met.

**B.    The Settlement Class satisfies the requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), as here, common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *See Amchem*, 521 U.S. at 607.

***Predominance***: Rule 23(b)(3) "requires 'predominance of common questions over individual ones' such that 'the adjudication of common issues will help achieve judicial economy.'" *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *29 (quoting *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1986)). "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625. Here, whether Defendants' statements relating to Ormat's deferred tax assets and internal controls were materially false, whether Defendants acted with the requisite scienter, and whether Defendants' conduct caused damages

to Plaintiff and the Class, predominate and are common to each member of the Class. This case thus meets the predominance requirement. *See, e.g.*, *Howell*, 298 F.R.D. at 656 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."); *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *29-30; *see also Papa*, 333 F.R.D. at 79-88 (finding proposed classes of investors who purchased stock on the NYSE and TASE meet the predominance requirement).

**Superiority**: Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiff's and the Settlement Class Members' claims. A district court that is "[c]onfronted with a request for settlement-only class certification" should evaluate the class definition to ensure that it is not "unwarranted or overbroad." *Amchem*, 521 U.S. at 620. A class definition is appropriate "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, given the alternatives—*e.g.*, unnecessarily burdening the United States and Israeli judiciary with numerous actions where "litigation costs would dwarf potential recovery"—resolving this case on a class-wide basis is clearly preferable. *Hanlon*, 150 F.3d at 1023. Additionally, as shown above, the proposed Settlement Class is clearly defined as Ormat investors who purchased Ormat's publicly traded common stock during a finite period. *See Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 U.S. Dist. LEXIS 84143, at *9 (N.D. Cal. June 28, 2015). The proposed Class definition here is thus proper for certification for settlement purposes. Class action treatment of this case is also superior to other methods as it avoids the duplication of efforts and inconsistent rulings and efficiently resolves the claims of the entire Settlement Class at once. *See, e.g.*, *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *14.

Because this Action satisfies the requirements of Rule 23(a) and (b)(3), the Court should certify the Settlement Class for purposes of this settlement.

### C.    The Court Should appoint Lead Counsel as Class Counsel

Rule 23(g) requires a court that certifies a class to also appoint class counsel, while considering counsel's (i) work in identifying or investigating potential claims, (ii) experience in handling class actions and the asserted claims, (iii) knowledge of the relevant law, and (iv) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). As discussed above, Pomerantz was appointed Lead Counsel and has done considerable work identifying and investigating potential claims in this matter. Lead Counsel has also devoted substantial time, effort, and resources to the prosecution of this Action. For these reasons and the others discussed above, Plaintiff respectfully requests that the Court appoint Lead Counsel as Class Counsel.

## VI.    THE FORM AND METHOD OF NOTICE SHOULD BE APPROVED

As discussed above, the Parties have negotiated the form of the Notice to be disseminated to the Class to notify them of the terms of the Settlement and of their rights in connection therewith, as well as the Publication Notice to be published on a national business newswire and two Israeli publications. The Notice and Publication Notice have been drafted to comply with the provisions of the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u-4(a)(7). The Notice provides detailed information concerning, *inter alia*, the proposed Settlement and POA, the fees and expenses to be sought by Plaintiff's Counsel, and the rights of Settlement Class Members, including the procedures for submitting a Proof of Claim, requesting exclusion from the Class, or objecting to the Settlement, POA, or fees, expenses, and service award requests.

As explained above, under the proposed Preliminary Approval Order, the Claims Administrator will mail the Notice and Proof of Claim to potential class members, post those materials to its website, and cause the Publication Notice to be published. The Claims Administrator will also make additional copies available to nominee holders, which will be requested to forward copies to all beneficial owners of Ormat shares or provide the Claims Administrator with their information so the Claims Administrator can mail them the Notice.

The Parties believe that notice scheme proposed here is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See, e.g.*, *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *13 (N.D. Cal. Nov. 20, 2015). Thus, the Court should find that the notices and the scheme for their dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

## VII.    PROPOSED SCHEDULE

Plaintiff respectfully proposes the following schedule:

| | |
|---|---|
| Deadline for mailing Notice, publication of Publication Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") ([Proposed] Prelim. Approval Order, ¶ 13) | Thirty (30) calendar days after entry of the Prelim. Approval Order |
| Deadline for Plaintiff to file papers in support of final Settlement approval, Lead Counsel's Fee and Expense Award, and Plaintiff's service award ([Proposed] Prelim. Approval Order, ¶ 24) | Thirty-five (35) calendar days prior to the Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests and objections ([Proposed] Prelim. Approval Order, ¶ 18) | Twenty-one (21) calendar days before the Settlement Hearing |
| Last day for Settlement Class Members to submit comments in support of or objections to the proposed Settlement and other matters to be considered at the Final Settlement Hearing ([Proposed] Prelim. Approval Order, ¶ 23) | Twenty-one (21) calendar days before the Settlement Hearing |
| Deadline for Plaintiff to file reply papers in support of final Settlement approval, Lead Counsel's Fee and Expense Award, and Plaintiff's service award, and in response to any objections ([Proposed] Prelim. Approval Order, ¶ 24) | Seven (7) calendar days before the Settlement Hearing |
| Deadline to submit Proofs of Claim ([Proposed] Prelim. Approval Order, ¶ 17) | Five (5) calendar days before the Settlement Hearing |
| Settlement Hearing ([Proposed] Prelim. Approval Order, ¶ 20) | At the Court's earliest possible convenience, no earlier than 110 days after entry of the Prelim. Approval Order |

## VIII.    CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form filed herewith.

Dated: June 10, 2020

Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**


By: __/s/ *Andrew R. Muehlbauer*_____
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Tel.: 702.330.4505
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel:    (212) 661-1100
Email: jalieberman@pomlaw.com
        mjsteven@pomlaw.com
        egottlieb@pomlaw.com

*Attorneys for Lead Plaintiff Phoenix
Insurance Company Ltd.*

1

2

**CERTIFICATE OF SERVICE**

I, ANDREW R. MUEHLBAUER, hereby certify that on June 10, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice. The sealed document referenced herein was paper served on the opposing attorneys set forth below, pursuant to LR IA 10-5.

*/s/ Andrew R. Muehlbauer*

Andrew R. Muehlbauer

| | |
|---|---|
| Matthew C. Addison<br>Sarah Ashley Ferguson<br>**McDonald Carano Wilson LLP**<br>100 West Liberty Street, 10th Floor<br>P.O. Box 2670<br>Reno, NV 89505 | Attorneys for Ormat Technologies, Inc.,<br>Doron Blachar, and Isaac Angel |
| Douglas P. Baumstein<br>Dominique Forrest<br>**White & Case LLP**<br>1221 Avenue of the Americas<br>New York, NY 10021 | Attorneys for Ormat Technologies, Inc.,<br>Doron Blachar, and Isaac Angel |

{00370676;24 }