**MUEHLBAUER LAW OFFICE, LTD.**
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com
egottlieb@pomlaw.com

*Lead Counsel for Lead Plaintiff*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| MAC COSTAS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ORMAT TECHNOLOGIES, INC., ISAAC ANGEL, and DORON BLACHAR, <br><br> Defendants. | No. 3:18-cv-00271-RCJ-WGC <br><br> Hon. Robert C. Jones <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MOTION; MEMORANDUM OF POINTS AND AUTHORITIES** |

**NOTICE OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

Lead Plaintiff Phoenix Insurance Company Ltd. on behalf of itself and all members of the proposed Settlement Class (defined below), hereby respectfully moves this Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to: (i) finally certify the Settlement Class and appoint Lead Plaintiff and Class Representative and Lead Counsel as Class Counsel; (ii) grant final approval of the Settlement; (iii) approve the Plan of Allocation; (iv) find that Plaintiff, through the Claims Administrator, provided notice to the Settlement Class as the Court directed, satisfying due process and the Private Securities Litigation Reform Act of 1995's mandate; and (v) grant such other and further relief as may be required.

Lead Plaintiff is contemporaneously filing herewith a memorandum of points and authorities and accompanying Declaration of Jeremy A. Lieberman in Support of: (1) Lead Plaintiff's Consented Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff ("Lieberman Declaration") and the exhibits attached thereto, incorporated herein by reference, in support of this motion.

This Motion is based on the following memorandum of points and authorities and accompanying Lieberman declaration and the exhibits attached thereto, the Court's file in this action, and any additional evidence or argument that the Court may request.

The [Proposed] Order and Final Judgment, negotiated by the Parties (*see* Ex. D. to Settlement Stip., Dkt. No. 83-2), is also filed herewith.

Defendants support the relief requested.

NOTICE OF LEAD PLAINTIFF'S MOT. FOR FINAL APPROVAL AND MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

i

# TABLE OF CONTENTS

NOTICE OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION ............................................. i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................... iv

I.      INTRODUCTION ........................................................................... 1

II.     ARGUMENT .................................................................................. 2

    A.      The Court Should Finally Certify the Settlement Class ........................................... 2

    B.      The Court Should Approve the Proposed Settlement as Fair, Reasonable, And Adequate ......................................................................................................... 3

        1.      The Standard for Final Approval of Class Action Settlements ................... 3

        2.      Application of the Ninth Circuit's and Rule 23(e) Criteria Supports Approval of the Settlement ................................................................ 6

            a.      The Strength of Lead Plaintiff's Case and Risks Associated with Continued Litigation ................................................................ 6

            b.      Establishing Liability ................................................................ 7

                i.      Loss Causation and Damages Defenses ........................... 7

            c.      The Expense and Likely Duration of Further Litigation ............... 10

            d.      The Risk of Maintaining Class Action Status Through Trial ........ 11

            e.      Amount Offered in the Settlement ................................................. 12

            f.      The Extent of Discovery Completed and the Stage of the Proceedings ................................................................ 13

            g.      Counsel's Experience and Views ................................................. 14

            h.      The Settlement is Not the Product of Collusion ........................... 15

        3.      The Reaction of Class Members to the Proposed Settlement ................... 15

    C.      The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e) ......................................................................................................... 16

        1.      The Dissemination of Notice Satisfies Due Process ............................... 17

        2.      Contents of the Notice Satisfy Due Process ........................................... 18

    D.      The Remaining Rule 23(e) Factors Support Final Approval .............................. 19

        1.      The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii)) ................................................................ 19

NOTICE OF LEAD PLAINTIFF'S MOT. FOR FINAL APPROVAL AND MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

ii

2. The Proposed Award of Attorneys' Fees Is Fair and Reasonable (Rule 23(e)(2)(C)(iii)) ........................................................................21

3. Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) ..............................................21

4. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) ....................................................................23

E. The Plan of Allocation of the Net Settlement Fund Is Fair, Adequate, and Reasonable and Should Be Approved ...............................................23

III. CONCLUSION ..............................................................................24

**Cases**

*Ansell v. Laikin*,
  No. CV 10-9292 PA, 2012 WL 13034812 (C.D. Cal. July 11, 2012)......................................7

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................15

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
  No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ...................................3

*Brown v. China Integrated Energy Inc.*,
  No. CV1102559BROPLAX, 2015 WL 12712081 (C.D. Cal. Aug. 19, 2015) ......................16

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
  No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)........................................................................22

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015)........................................................................17

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001) ...........................................12

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...........................................5

*Colesberry v. Ruiz Food Prod., Inc.*,
  No. 04-cv-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006)..............................................17

*Destefano v. Zynga, Inc.*,
  No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................10, 13

*Destefano v Zynga*,
  No. 12-CV-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015)..........................................................................8

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ....................................................................................8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................................17

*Eisen v. Porsche Cars N. Am., Inc.*,
    No. 2:11-CV-09405-CAS 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ................................14

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .......................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018).........................................22

*Ferrell v. Buckingham Prop. Mgmt.*,
    2020 U.S. Dist. LEXIS 9919 (E.D. Cal. Jan. 17, 2020) ........................................15

*Fishoff v. Coty Inc.*,
    No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634
    F.3d 647 (2d Cir. 2011) ..............................................................................7

*In re Flag Telecom Holdings*,
    No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y.
    Nov. 5, 2010)..........................................................................................8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...........................4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .........................................................................10

*Goldman Sachs Group v. Arkansas Teachers Retirement System*,
    No. 20-222 (U.S.) .....................................................................................12

*Gudimetla v. Ambow Educ. Holding*,
    No. 12-cv-5062 PSG, 2014 U.S. Dist. LEXIS 195147 (C.D. Cal. Dec. 2, 2014) ..................12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................5, 16

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ................................7

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..............................11, 23

*In re Illumina*,
　　2019 U.S. Dist. LEXIS 217596 ..................................................................15

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.,
　　Inc.*,
　　No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..............12, 14

*Krangel v. Golden Rule Res., Ltd.*,
　　194 F.R.D. 501 (E.D. Pa. 2000) ..................................................................17

*Lee v. Enter. Leasing Co.-W.*,
　　No. 3:10-CV-00326-LRH, 2015 WL 2345540 (D. Nev. May 15, 2015)................................4

*Linney v. Cellular Alaska P'ship*,
　　151 F.3d 1234 (9th Cir. 1998) ....................................................................3

*Marshall v. Holiday Magic, Inc.*,
　　550 F.2d 1173 (9th Cir. 1977) ..............................................................17, 18

*In re Mego Fin. Corp. Sec. Litig.*,
　　213 F.3d 454 (9th Cir. 2000) ..............................................................*passim*

*Mendoza v. Tucson Sch. Dist. No. 1*,
　　623 F.2d 1338 (9th Cir. 1980) ..................................................................16

*In re MicroStrategy, Inc. Sec. Litig.*,
　　148 F. Supp. 2d 654 (E.D. Va. 2001) ..............................................................23

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
　　221 F.R.D. 523 (C.D. Cal. 2004)........................................................10, 14, 18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
　　688 F.2d 615 (9th Cir. 1982) ..............................................................4, 5, 6, 13

*In re Omnivision Techs., Inc.*,
　　559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................................13, 15

*Rannis v. Recchia*,
　　380 F. App'x 646 (9th Cir. 2010) ..................................................................17

*Redwen v. Sino Clean Energy, Inc.*,
　　No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013)................6, 14, 23

*Szymborski v. Ormat Techs. Inc.*,
　　No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ......................................5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................5, 10, 17

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................4

*Vargas v. Ford Motor Co.*,
    No. 12-cv-08388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020) ...................5

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11-cv-00406-SC-DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............9

*Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*,
    173 F.3d 713 (9th Cir. 1999) .................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 735 (2d Cir. 1986)................9

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) .......................................................................13

Israeli Securities Law, 1968 ......................................................................20

Private Securities Litigation Reform Act of 1995 ...........................................18, 19, 24

**Rules**

Fed. R. Civ. P. 23 ............................................................................*passim*

**Other Authorities**

Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904 (Apr. 26, 2018)................................................................................................5

4 Alba Conte & Herbert Newberg, *Newberg On Class Actions* § 11.53......................17

Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis* (Mar. 11, 2020) ......................................................................13

Fed. R. Civ. P. 23(a) and (b)(3) .................................................................3

NOTICE OF LEAD PLAINTIFF'S MOT. FOR FINAL APPROVAL AND MEMO IN SUPPORT OF LEAD
PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION

vii

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Phoenix Insurance Company Ltd. ("Lead Plaintiff" or "Plaintiff"), respectfully submits this memorandum of points and authorities in support of its motion for (i) final certification of the Settlement Class for purposes of this Settlement only; (ii) final approval of the proposed $3.75 million, plus interest, settlement (the "Settlement") of the above-captioned class action (the "Action"); (iii) approve the implementation of the Notice[1] program; and (iv) final approval of the proposed Plan of Allocation.[2, 3]

## I.    INTRODUCTION

Lead Plaintiff has achieved a commendable resolution of this Action. This $3.75 million all-cash settlement is a fair, adequate, and reasonable result for the Settlement Class. The Settlement avoids the risks and expense of continued litigation, including the real risks of recovering less than the Settlement Amount or nothing at all. As described below and in the accompanying Lieberman Declaration,[4] Lead Plaintiff faced, and would continue to face Defendants' vigorous opposition with respect to the legal and factual bases of Lead Plaintiff's

---

[1] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action, ("Long Notice") and Publication Notice of Pendency and Proposed Class Action Settlement ("Summary Notice" or "Publication Notice").

[2] All capitalized terms not otherwise defined herein shall have the same meanings as those in the Stipulation and Agreement of Settlement. (Dkt. No. 83-2).

[3] In light of the current emergency and the Court's general permission to conduct certain hearings via videoconference (General Order 2020-05), the Parties seek the Court's permission to conduct the January 11, 2021 Settlement Hearing in this case (Dkt. No. 88, at 6, ¶ 20) by conference call or by other remote means. If the Court grants permission, Lead Plaintiff will inform the Settlement Class of the change of format by (a) uploading this change to the Claims Administrator's website, (b) issuing a press release/follow-on summary notice, confirming the date and time of the Settlement Hearing and alerting Settlement Class Members to the change and where to seek instructions for participating in the Settlement Hearing, and (c) alerting anyone who files an objection directly about the change.

[4] The Declaration of Jeremy A. Lieberman in Support of: (1) Lead Plaintiff's Consented Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion For Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff contains a more detailed description of the allegations and claims, the Action's procedural history, and the events that led to the Settlement, among other matters.

claims. In particular, had the Settlement not been reached, Lead Plaintiff would have faced considerable hurdles in certifying a class, surviving summary judgment, and proving scienter, loss causation, and establishing damages at trial.

As detailed in the Lieberman Declaration, the Settlement was reached after Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of the claims, including the potential limitations on recovery, and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, *inter alia*, a review and analysis of Ormat's public statements, public reports and news articles concerning Ormat, interviews with former employees, and consultations with damages, accounting and loss causation experts; (ii) drafted the Consolidated Amended Class Action Complaint (the "Complaint" or "Amended Complaint") (Dkt. No. 52); (iii) successfully opposed Defendants' motion to dismiss; and (iv) participated in arms'-length settlement negotiations, including a full-day mediation before mediator Jed D. Melnick, Esq., who has substantial experience in mediating securities fraud class actions. Given Lead Plaintiff's informed assessment of the strengths and weaknesses of the claims and defenses asserted as well as the risks and delays of continued litigation and trial, the Settlement is fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully requests that the Court finally certify the Settlement Class for settlement purposes, approve Lead Plaintiff's implementation of the Notice program, grant final approval of the Settlement, and approve the Plan of Allocation.

## II.     ARGUMENT

### A.     The Court Should Finally Certify the Settlement Class

The Court's September 3, 2020 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). (*See* Dkt. No. 88 at ¶ 4.) There have been no changes to alter the propriety of class certification for settlement purposes. Additionally, without any objection from a member of a settlement class—as is

currently the case here[5]—courts typically finally certify settlement classes as part of the final approval process. *See, e.g., Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014) ("For the reasons discussed in the Court's Preliminary Approval Order, the Court finds that the requirements for certification of the conditionally certified settlement class have been met, and that the appointment of . . . Class Representative and . . . Class Counsel is proper.").

Thus, for the reasons stated in Lead Plaintiff's Preliminary Approval Brief (*see, e.g.*, Dkt. No. 83 at 17-22) and in the Court's Preliminary Approval Order (Dkt. No. 88 at 2-3, at ¶¶ 4-5), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3) and (i) finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint Lead Counsel as Class Counsel.

### B. The Court Should Approve the Proposed Settlement as Fair, Reasonable, And Adequate

#### 1. The Standard for Final Approval of Class Action Settlements

Rule 23(e) requires court approval for any class action settlement, encouraging approval of settlements that are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit, "strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "[V]oluntary

---

[5] Although the January 4, 2021 deadline for objections to all aspects of the Settlement set by the Court in the Preliminary Approval Order has not yet passed, as of the date of this Brief, no Settlement Class member has objected to any aspect of the Settlement, including the definition of the Settlement Class or, more generally, the Court order certifying it. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl." or "Bravata Declaration") at ¶ 14 attached as Exhibit 4 to the Lieberman Declaration. To the extent any objections are received, Lead Plaintiff intends to address them in its reply brief that the Preliminary Approval Order requires be filed by 5:00 P.M. on January 6, 2021.

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

3

conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *4 (D. Nev. May 15, 2015) ("The Ninth Circuit has recognized a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned'") (quoting *Class Plaintiffs*, 955 F.2d at 1276).

Class action suits lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

For a class action settlement to be finally approved under Rule 23(e), it must be "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, courts in the Ninth Circuit consider and balance pertinent factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

4

participant; and (8) the reaction of class members to the proposed settlement.[6] *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice*, 688 F.2d at 625 (same); *Szymborski v. Ormat Techs.*, Inc., No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *1–2 (D. Nev. Oct. 16, 2012) (same). Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Rule 23(e)(2), as amended on December 1, 2018, also instructs that the Court should determine whether the Settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including
>> the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Rule 23(e)(2) are not intended to "displace" the Ninth Circuit's *Hanlon* factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018); *Vargas v. Ford Motor Co.*, No. 12-cv-08388, 2020 WL 1164066, at *7 (C.D. Cal. Mar. 5, 2020) (quoting *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019)).

---

[6] With respect to the eighth factor, Settlement Class Members had until December 11, 2020 to request exclusion from the settlement and have until 5:00 P.M. on January 4, 2021 to object to the Settlement. If Lead Plaintiff receives any objections or exclusions, it will address them in its reply papers in support of final approval.

Within the framework of pertinent factors and the policy favoring resolution of complex cases, the Court has discretion to determine whether a settlement is fair, reasonable, and adequate. *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney*, 151 F.3d at 1238). In applying the pertinent factors, the Court should not prejudge the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds. *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). For the following reasons, this Court should approve the Settlement as fair, reasonable, and adequate.

2.    **Application of the Ninth Circuit's and Rule 23(e) Criteria Supports Approval of the Settlement**

a.    **The Strength of Lead Plaintiff's Case and Risks Associated with Continued Litigation**

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court should balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of a recovery. *See Mego*, 213 F.3d at 458. Although Lead Plaintiff believes that the case against Defendants is strong, it is aware of the risk that there may be no recovery, or a substantially smaller recovery, in complex class actions such as this one. Securities class actions like this Action "are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)). Had this Settlement not been reached, Lead Plaintiff would have confronted challenges, including

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

6

achieving and maintaining class certification, surviving summary judgment proving liability and the Settlement Class' damages at trial, and surviving one or more appeals on any eventual class certification ruling or verdict in its favor.

### b. Establishing Liability

As a complex, securities class action, numerous obstacles to establishing liability confronted Lead Plaintiff. *Ansell v. Laikin*, No. CV 10-9292 PA (AGRX), 2012 WL 13034812, at *7 (C.D. Cal. July 11, 2012) ("Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (internal citations omitted). More specifically, Lead Plaintiff confronted substantial risks and uncertainties in proving, *inter alia*, that Defendants acted with scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016); *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) (scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011). Further, Lead Plaintiff would have to prove that Defendants' alleged misstatements and/or omissions were material. That Lead Plaintiff's Complaint survived Defendants' motion to dismiss testing the facial sufficiency of the Complaint's allegations is a far cry from proving the claims at trial through admissible evidence. Thus, Lead Plaintiff would have to prove that Defendants knowingly made materially false and misleading statements to Ormat investors, as well as the other necessary elements of its claims.

### i. Loss Causation and Damages Defenses

A real risk in continuing the litigation is the difficulty in proving loss causation and the Settlement Class' damages, which Defendants would contest at summary judgment, in pretrial *Daubert* motions, and at trial. The law requires that "a plaintiff prove that the defendant's

misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

In addition to contesting falsity and scienter like they did at the pleading stage, Defendants would likely raise a number of fact-intensive defenses going forward in the litigation that pose substantial risks. For example, Lead Plaintiff faced the significant risk that Defendants would prevail in attacking loss causation and damages with the assistance of factual evidence and expert testimony that was not presented (and could not be considered) in their motion to dismiss. As courts in this Circuit have recognized, "in any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial." *See Destefano v Zynga*, No. 12-CV-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *35 (N.D. Cal. Oct. 27, 2015); *see also In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *53-54 (S.D.N.Y. Nov. 5, 2010) ("Even in a less challenging case, [c]alculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion ….").

Here, Defendants would likely argue that Lead Plaintiff will be unable to prove loss causation for at least three reasons. First, Defendants would likely argue that the stock price declines on the alleged corrective disclosure dates—May 11 and 16, 2018—were not statistically significant and that therefore no credible expert could opine that the price declines on those days were attributable to the revelation of the alleged fraud. Second, Defendants would attack Lead Plaintiff's attempt to recover any stock price declines that occurred on May 14, 2018, arguing that the increase in Ormat's share price on May 13, 2018 (the first trading day on the TASE following Ormat's May 11 disclosure) breaks the chain of causation between the May 11 disclosure and the May 14 stock drop on the NYSE. Moreover, the Defendants have claimed that the May 14 decline was caused not by Ormat's disclosures but by the news that a volcanic eruption nearby a major Ormat plant put this asset at risk and raised the market's awareness of the risks faced by geothermal energy companies generally and Ormat specifically. Third, Defendants would argue that, even assuming *arguendo* that the $0.67 decline on May 16 was

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

8

statistically significant (and it was not, according to Defendants), only a small fraction of that decline was related to Ormat's announcement of restated valuation allowances, given that academic literature shows that stock prices are only minimally affected by restatements of valuation allowances.

Although Lead Plaintiff had counterarguments to each of Defendants' attacks on loss causation (*see, e.g.*, Lieberman Decl. ¶¶ 38-39), there were substantial risks that the Court or jury would reject them and thus foreclose or substantially reduce any recovery. Resolution of these issues would require the testimony of expert witnesses and the Parties would end up in a risky "battle of experts" where it would be impossible to predict with any certainty which arguments a jury would favor. *See, e.g.*, *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406-SC-DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 735, 744-45 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"). The outcome could well have depended on whose testifying expert the jury believed or even whether the jury was able to follow the economic theories the experts would use. The Settlement eliminates the risk that the jury might award less than the amount of the Settlement or nothing at all to the Settlement Class

In sum, as a result of the availability to Defendants of the various defenses described, it is possible that, even if a court or a jury were to find that Defendants knowingly made misleading statements, Settlement Class Members would recover no damages, or damages in an amount smaller than the amount of the Settlement.

## c. The Expense and Likely Duration of Further Litigation

The expense and likely duration of the Action also supports final approval of the Settlement. *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the expense and duration of protracted litigation including class certification, summary judgment as well as preparing and trying the case to a jury, and any appeals would be significant. Because the Individual Defendants (Angel and Blachar), third parties, and relevant documents are located in Israel, there would be a substantial amount of foreign discovery in this case that would lead to additional expenses beyond what is normally incurred in a domestic case, including the potential need for depositions to occur overseas and/or require translation services. Lead Plaintiff would also likely need to translate many documents anticipated to be produced during discovery. Much of the discovery, once produced (and translated), would be extremely voluminous and complex. The ongoing pandemic may have also added time and expense to the discovery process, further delaying resolution of the action.

If litigation were to continue, Lead Counsel would also have been required to rely upon experts in fields of accounting, loss causation, price-impact, and damages, all of which would have required the expenditure of substantial additional costs. Barring a settlement, it is certain that this case would be litigated for years with the possibility that the end result would be no better for the Settlement Class, and might even be worse. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("continuing litigation would not only be costly—representing expenses that would take away from any ultimate class-wide recovery—but would also delay resolution and recovery for Settlement Class Members"); *cf Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

10

remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)). The parties would likely draft and respond to *Daubert* motions and summary judgment motions. Thereafter, the Court would need to conduct a trial on any issues that remained in the case. A trial would have been very complicated for jurors, given the tremendous amount and complexity of fact and expert discovery that would need to be presented.

Moreover, even assuming *arguendo* that Lead Plaintiff were to clear each of these hurdles, it is likely that Defendants would appeal, injecting uncertainty and delay into the Class's recovery.

The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continuing litigation. This factor weighs strongly in favor of final approval of the Settlement.

### d. The Risk of Maintaining Class Action Status Through Trial

Absent the Settlement, Defendants would have contested Lead Plaintiff's anticipated motion for class certification. The class certification process adds time and expense as it requires Lead Plaintiff's and expert depositions as well as expert reports on market efficiency. This motion's outcome would be far from certain. Even if a class was certified, it is conditional as Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g.*, *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Because maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results") (citing *Nat'l Rural Telecommc'ns.*, 221 F.R.D. at 526 (internal quotation omitted)). Further, the Supreme Court's

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

11

recent grant of a writ of certiorari in an appeal from a decision granting a class certification motion, in *Goldman Sachs Group v. Arkansas Teachers Retirement System*, No. 20-222 (U.S.), poses additional risks, as addressed in the Lieberman Declaration. Lieberman Decl. ¶ 47. Accordingly, there were many risks to maintain this action as a class action through trial.

### e. Amount Offered in the Settlement

In evaluating a settlement's fairness, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay and expense. In this regard, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (citation omitted). Indeed, "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

The proposed Settlement is well within the range of reasonableness in light of the best possible recovery at trial and the risks of continued litigation. The $3.75 million Settlement provides the Settlement Class with nearly 10% of the maximum recoverable class-wide aggregate damages of $38.6 million. Lieberman Decl. ¶¶ 6, 58.[7] This percentage of recovery of damages falls well within the range of approval, as even a "small recovery may be fair, reasonable, and adequate." *Gudimetla v. Ambow Educ. Holding*, No. 12-cv-5062 PSG (AJWx), 2014 U.S. Dist. LEXIS 195147, at *17-18 (C.D. Cal. Dec. 2, 2014); *see e.g.*, *Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding that 3.5% of the maximum damages "is within the median recovery in securities class actions settled in the last few years"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities

---

[7] The vast majority of the $38.6 million in estimated damages ($30.7 million or about 80%) are attributable to trading on U.S. exchanges, not TASE. *See id.* ¶ 58.

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

12

class actions range from 1.6% to 14% of total losses); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving ~6% recovery of maximum damages (citing *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) (median recovery between 2% to 3% of maximum damage)).[8] Additionally, as reported by Cornerstone Research, between 2010 and 2019, the median settlement as a percentage of damages in cases alleging Rule 10b-5 violations was 4.6%, and, in 2019, the median settlement as a percentage of damages in such cases was 4.8%. *See* Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis*, at 7, 21 (Mar. 11, 2020) (Dkt. No. 83-5).

Thus, the Settlement proposes a reasonable recovery to Settlement Class Members and the Court should finally approve it.

### f. The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness and adequacy of a settlement. *See Mego,* 213 F.3d at 459. While formal discovery was only in its early stages due to the PSLRA's discovery stay (*see* 15 U.S.C. § 78u-4(b)(3)(B)), "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Zynga*, 2016 WL 537946 at *12 (citing *Linney*, 151 F.3d at 1239). Nonetheless, Lead Plaintiff did, through its counsel, conduct its own investigation for the Amended Complaint and thereafter, including in connection with preparing for the mediation and preparing formal discovery requests.

As a result of these efforts, and through the mediation process, Lead Plaintiff, through its counsel, had a comprehensive understanding of the Action and sufficient information to make a

---

[8] *See also, e.g.*, *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair").

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

13

well-informed decision regarding the fairness of the Settlement. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen*, 2013 WL 12303367, at *7 (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative"). Thus, this factor supports final approval of the Settlement.

### g. Counsel's Experience and Views

Experienced counsel, negotiating at arm's-length, and endorsing the Settlement weigh in favor of final approval. The views of the attorneys actively conducting the litigation and who are most closely acquainted with the facts of the underlying litigation are entitled to "great weight." *Nat'l Rural Telecommc'ns.*, 221 F.R.D. at 528; *see also Int'l Brotherhood of Elec. Workers Local 697 Pension*, 2012 WL 5199742, at *3 (giving "considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Lead Counsel, intimately familiar with the strengths and weaknesses of the case and the core facts, believes the Settlement is fair, adequate and reasonable, and particularly so in view of the risks, burdens and expense of continued litigation. Lead Counsel are skilled practitioners and have extensive and significant experience litigating securities class actions.[9] "There is nothing to

---

[9] *See* Pomerantz LLP's firm resume attached as Exhibit A to the Declaration of Jeremy A. Lieberman of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), Ex. 1 to the Lieberman Declaration.

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

14

counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Accordingly, this factor strongly favors approval of the Settlement.

### h. The Settlement is Not the Product of Collusion

Another factor to consider at the final approval stage is whether there is any evidence that a settlement is the result of collusion. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Mego*, 213 F.3d at 458. The Settlement has none of the *indicia* of collusion identified in the Ninth Circuit. *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). Rather, the Parties reached the Settlement after substantial discussions, including formal mediation before mediator Mr. Jed Melnick, Esq., a well-respected mediator, with substantial experience in mediating complex securities class action, preceded by the exchange of detailed opening and reply mediation statements. *See* Lieberman Decl. ¶¶ 3, 5, 50. "The assistance of a mediator in negotiating the settlement supports a determination that the settlement was negotiated at arm's length and is non-collusive." *Ferrell v. Buckingham Prop. Mgmt.*, 2020 U.S. Dist. LEXIS 9919, at *50 n.7 (E.D. Cal. Jan. 17, 2020) (collecting cases); *In re Illumina*, 2019 U.S. Dist. LEXIS 217596, at *15 ("Settlements reached with the help of a mediator are likely non-collusive" (citation omitted)). Defendants were also zealously represented by White & Case LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., highly-respected law firms recognized as having a strong complex litigation practices. Accordingly, this factor, like the others discussed above, favors final approval.

### 3. The Reaction of Class Members to the Proposed Settlement

The reaction of the Settlement Class is an important factor in evaluating whether to approve a proposed settlement. The absence of objections to a proposed settlement supports final approval. *Omnivision*, 559 F. Supp. 2d at 1043. As detailed in Section II(C), *infra*, Notice was

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

15

disseminated to Settlement Class Members by several methods including mailing and publication. As required by Rule 23(e)(4)-(5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See, e.g.*, Bravata Decl., ¶ 3, Ex. A (Notice). The deadline to object to the Settlement is January 4, 2021, and the deadline to exclude oneself from the Settlement was December 11, 2020. Bravata Decl., ¶¶ 13-14.

As of the date of this motion, no requests for exclusion have been received, and no Settlement Class Member has objected to the Settlement or to the request for attorneys' fees, reimbursement of out-of-pocket expenses, or the Award of up to $20,000 to Lead Plaintiff. *See id.* The Settlement Class' positive reaction to the Settlement supports final approval. *Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX, 2015 WL 12712081, at *8 (C.D. Cal. Aug. 19, 2015) (court finding the class response to a settlement is "positive" in "absence of any substantive objections to the terms or conditions of the proposed settlement, the class."). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458. The overwhelmingly positive reaction to the Settlement supports its final approval.

In short, the pertinent factors courts consider support the Settlement being fair, reasonable and adequate. Thus, the Settlement should be finally approved.

## C. The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e)

The Ninth Circuit requires class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) (citation omitted). Due process requires that class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid, bright-line rules to determine whether a settlement notice to the class satisfies constitutional or

Rule 23(e) requirements. Instead, to satisfy due process and comply with Rule 23(e), notice need only fairly apprise class members of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374–75. Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11.53 at 167.

### 1. The Dissemination of Notice Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Prod., Inc.*, No. 04-cv-5516, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citation omitted). Courts routinely find that providing long-form notice by mail, along with publishing summary notice on a major business newswire service and in print, and posting the Notice and Proof of Claim on the Settlement Administrator's website, as done here, is sufficient to satisfy due process requirements. *See, e.g.*, *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *13 (N.D. Cal. Nov. 20, 2015) (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient); *Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 505 (E.D. Pa. 2000) ("The mailing of the notice to identifiable class members and major financial institutions and publication of the summary notice in The Wall Street Journal and The Globe and Mail was the best means practicable to notify class members and, thus, satisfies Rule 23").

Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS") mailed 21,414 copies of the Long

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

17

Notice and Proof of Claim and Release Form ("Notice Packet"), and emailed direct links for the settlement webpage for the Notice Packet in English and in Hebrew to 5,676, to potential Settlement Class Members. Bravata Decl. ¶ 7. On September 16, 2020 SCS posted on a URL on its website it dedicated to this Settlement the Notice Packet in English and in Hebrew, the Court's Preliminary Approval Order, the Settlement Stipulation, an online claims filing link, and, among other things, frequently asked questions. *Id.* ¶ 12. On October 1, 2020, SCS caused GlobeNewswire to disseminate electronically the Summary Notice, and, October 4, 2020, SCS caused two leading Israeli newspapers, Israel Hayom and Globes, to print the Summary Notice in Hebrew. *Id.* ¶ 10 (citing Bravata Decl. Ex. C). As such, this Court should approve the Notice program as satisfying due process and the Private Securities Litigation Reform Act of 1995's ("PSLRA") mandate.

### 2. Contents of the Notice Satisfy Due Process

Lead Plaintiff respectfully submits that the Notice program utilized here readily meets the due process standard. The Ninth Circuit holds that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representative; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178; *Nat'l Rural Telecommc'ns. Coop.*, 221 F.R.D. at 529 (finding notice sufficient when, as here, it described the background of the case and the terms of the proposed settlement, and provided class members with "clear instructions about how to object").

Here, the Court-approved Notice provided all of the required information: a description of the $3.75 million Settlement Fund and Plan of Allocation of the Settlement Fund; Lead Counsel's intent to apply for a fee award in an amount not to exceed one-third of the Settlement Fund and an amount not to exceed $115,000 for expense reimbursements; the request for a

service award to Lead Plaintiff in the amount not to exceed $20,000; and the contact information for Lead Counsel and the Claims Administrator, including how to make inquiries to both. The Notice also included the date, time, and place of the Settlement Hearing, described how to file a claim, described how to object to or request exclusion from the Settlement, and informed class members that any objection must be received by the Court and counsel for the Parties no later than 5:00 P.M. January 4, 2021. Furthermore, the Court-approved Notice adequately informed Settlement Class Members of the Settlement's impact including release of claims against Defendants for any class members who do not opt out. *See, e.g.*, Bravata Decl., Exs. A, C.

In sum, broad dissemination of the Court-approved Notice satisfied due process and PSLRA requirements. Accordingly, the Settlement should be granted final approval.

### D. The Remaining Rule 23(e) Factors Support Final Approval

#### 1. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Proof of Claim and Release Forms in accordance with the Plan of Allocation. In addition, with respect to Settlement Class Members who purchased Ormat common stock on the TASE exchange, Lead Counsel has agreed to pursue a claims-free distribution process for the Israeli exchange purchases. *See* § II(D)(3), *infra*; Lieberman Decl. ¶¶ 51-52.

Specifically, for any Class Members who have submitted a Proof of Claim and Release Form—regardless of whether they purchased on the TASE exchange—SCS will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their claim or request review of the denial of their claim, and ultimately mail a check to or wire Authorized Claimants their pro rata share of the Net Settlement Fund as calculated under the Plan of Allocation, upon approval of the Court.[10] This type of claims processing and method

---

[10] Prior to distributing funds to Settlement Class Members, Lead Counsel will file a motion requesting the Court's leave to approve distributions from the settlement fund, which will include, among other things, a detailed discussion of the distribution methods, including the unique claims-free process of distributing funds through the "push-mechanism" available to

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

19

for distributing settlement proceeds is standard in securities and other class actions and is effective. Moreover, the Settlement is not "claims-made"—none of the Settlement will revert to Ormat.

As to Settlement Class Members who purchased Ormat common stock on the TASE during the Settlement Class Period, but have not submitted a Proof of Claim and Release Form, they may be eligible to receive a distribution through "push-mechanism" available through the TASE exchange. The potential availability of this unique distribution mechanism is the result of an agreement reached between Lead Counsel, Defendants (through their counsel), and Aiden, Tirosh & Co., Advocates ("Israeli Counsel")—an Israeli firm that brought a class action in Israel against Ormat and certain of its officers asserting violations of the Israeli Securities Law, 1968 on behalf of a proposed class of investors who purchased Ormat common stock on the TASE, based on the same underlying factual allegations, and covering the same Settlement Class Period, in this Action. This agreement, which is also discussed below in Section II(D)(3), occurred after the Court had already entered the Preliminary Approval Order and after notice was provided in accordance with that order.[11] Lieberman Decl. ¶¶ 10.

The "push-mechanism" process, if available under the circumstances here, ensures "that all the relevant [Ormat] shareholders that are entitled to compensation [under the Settlement] [] receive their [pro rata share as calculated under the Plan of Allocation] without being required to submit a proof of claim to the [claims] administrator…." Lieberman Decl. ¶ 51 (quoting Aiden

---

Settlement Class Members who are eligible to receive a recovery as a result of their purchases of Ormat common stock on the TASE during the Settlement Class Period, which is described further below. *See* § II(D)(1), *infra*; Lieberman Decl. ¶¶ 50-52 and Ex. 3 thereto, Declaration of Edan Aiden In Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Aiden Expense Decl.") at ¶¶ 4-9). If the Court in Israel does not approve of and require the TASE members to share their customers' relevant transactional information, then distributions of the Settlement Fund will be made to TASE investors in the traditional U.S. format, i.e., by sending checks directly to claimants that filed valid Proofs of Claim. Lieberman Decl. ¶ 51.

[11] The proposed class in the Israeli Action is now duplicative of, and covered by, the proposed Settlement Class here. *See id.* ¶ 52(c).

Expense Decl. ¶ 8).[12] Additionally, Settlement Class Members who purchased Ormat common stock on the TASE during the Settlement Class Period, who have submitted a Proof of Claim and Release Form but wish to receive payment via the "push-mechanism" potentially available through the TASE, are free to inform Lead Counsel or the Claims Administrator of that fact.[13]

### 2. The Proposed Award of Attorneys' Fees Is Fair and Reasonable (Rule 23(e)(2)(C)(iii))

The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in detail in the accompanying Fee Brief, the proposed attorneys' fees of one-third, to be paid upon approval by the Court, are reasonable in light of the substantial work and efforts of Lead Counsel, their significant investment of resources in the case, their skillful prosecution of the action for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved. Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees is entirely separate from approval of the Settlement; neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses.

### 3. Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

As explained in Lead Plaintiff's Preliminary Approval Brief, the Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion. *See* Dkt. No. 83, at 15-16. This type of agreement, which is standard in securities

---

[12] The Aiden Expense Declaration, as well as the Lieberman Declaration, provide a more detailed discussion of the "push mechanism" distribution method. *See* Lieberman Decl. Ex. 3, Aiden Expense Decl. ¶¶ 4-9; Lieberman Decl. ¶¶ 51-52.

[13] As noted, the agreement between Lead Plaintiff, the Israeli Action plaintiff, and Defendants, was entered into after the filing of Lead Plaintiff's Preliminary Approval Motion (Dkt. No. 83), attaching the Settlement Stipulation and exhibits thereto (Dkt. No. 83-2), and after notice was provided to the class in accordance with the Court's Preliminary Approval Order on October 1 and October 4, 2020. *See* Bravata Decl. ¶10.

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

21

class action settlements, has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.,* No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235, at \*32 (N.D. Cal. Aug. 25, 2016) (approving settlement with similar confidential agreement); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, 2018 WL 1942227, at \*5 (N.D. Tex. Apr. 25, 2018) (same).

Additionally, as noted above, after the Court entered the Preliminary Approval Order and notice was sent, Lead Plaintiff, Defendants, and the plaintiff in the Israeli Action, through their respective counsel, entered into an agreement relating to the proposed Settlement. *See* Lieberman Decl. ¶¶ 50-52. The agreement was reached following arms'-length negotiations, which included a mediation with a neutral mediator. *Id.* ¶ 50. Under that agreement, Lead Plaintiff, has agreed to pursue efforts to distribute settlement funds to Class Members who purchased Ormat stock on the TASE and were included in the definition of the proposed class in the Israeli Action their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, through the automated TASE "push mechanism" system. *Id.* ¶ 51. That agreement also provides, among other things, that to the extent it is necessary to obtain judicial approval in Israel to effectuate such a distribution, Israeli Counsel shall take whatever steps are necessary to obtain that approval. *Id.* ¶ 52(a). Lead Counsel has also agreed to share a portion of any fees it obtains in this Action with Israeli Counsel for its assistance in effectuating the distribution through the automated TASE system. *Id.* ¶¶ 52(b). As part of the agreement, Israeli Counsel agreed on behalf of the plaintiff in the Israeli Action to dismiss the Israeli Action, finding otherwise that the Settlement was fair and reasonable for TASE investors. *See* Lieberman Decl. ¶ 52(c). As such, this Settlement, in addition to the agreement relating to the Israeli Action with Israeli Counsel and Defendants, provides for a global resolution for all investors (other than Excluded Persons) who purchased Ormat Shares on a U.S. exchange or on the TASE between August 3, 2017 and May 15, 2018 (inclusive). Additional information about the agreement can be found in the accompanying Lieberman Declaration. *See* Lieberman Decl. ¶¶ 51-52(a)-(d).

#### 4. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires that the Court assess whether "the proposal treats class members equitably relative to each other." The Settlement does that. All Authorized Claimants, will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss calculated under the Plan of Allocation. Lieberman Decl. ¶¶ 53-55; Bravata Decl., Ex. A (notice); *see also* § II (E), *infra* (regarding Plan of Allocation). Likewise, Lead Plaintiff has agreed to engage in a process with Israeli Counsel to ensure Settlement Class Members potentially eligible for distribution via the automated TASE "push mechanism" system will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss calculated under the Plan of Allocation.

### E. The Plan of Allocation of the Net Settlement Fund Is Fair, Adequate, and Reasonable and Should Be Approved

Lead Plaintiff requests that the Court grant final approval of the Plan of Allocation, previously submitted in the preliminary approval motion, for the purpose of administering the Settlement. "Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284–85). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Heritage*, 2005 WL 1594403, at *11. "[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at *8 (citation and internal quotation marks omitted).

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

23

Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting damages expert. Lieberman Decl. ¶ 53. The Plan of Allocation was disclosed in the Long Notice available to all potential Settlement Class Members and, as of the filing of this motion, no Settlement Class Member has filed an objection to it. Bravata Decl., ¶ 14, Ex. A (notice). Under the Plan of Allocation, the Net Settlement Fund will be distributed among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. *See, e.g.*, Lieberman Decl. ¶¶ 53-55. These formulas consider the amount of alleged artificial inflation in the prices of Ormat publicly traded common stock as quantified by Lead Plaintiff's expert. Lead Plaintiff's consulting damages expert analyzed the movement in the prices of Ormat securities and took into account the portion of the price drops attributable to the alleged fraud. Authorized Claimants will be eligible for a payment based on when they purchased, held, or sold their Ormat common stock. Additionally, Class Members who purchased their Ormat shares on the TASE and are eligible for a payment may be able to receive their payment directly though the TASE exchange, as discussed above and in the Lieberman Declaration. Accordingly, for all of the reasons set forth herein and in the Lieberman Declaration, the Plan of Allocation is fair, reasonable, and adequate and should be approved.

## III.     CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Court: (i) finally certify the Settlement Class; (ii) appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; (iii) grant final approval of the Settlement; (iv) find that notice to the Settlement Class was provided as required and to the satisfaction of due process and the PSLRA; and (v) approve the Plan of Allocation as fair, reasonable and adequate.

Dated: December 21, 2020                   Respectfully submitted,

                                           **MUEHLBAUER LAW OFFICE, LTD.**


                                           By:   /s/ *Andrew R. Muehlbauer*
                                           ANDREW R. MUEHLBAUER, ESQ.

MEMO IN SUPPORT OF LEAD PLAINTIFF'S CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

24

Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Tel.: 702.330.4505
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel:     (212) 661-1100
Email: jalieberman@pomlaw.com
         mjsteven@pomlaw.com
         egottlieb@pomlaw.com

*Attorneys for Lead Plaintiff Phoenix
Insurance Company Ltd.*

# CERTIFICATE OF SERVICE

I, ANDREW R. MUEHLBAUER, hereby certify that on December 21, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Andrew R. Muehlbauer*

Andrew R. Muehlbauer