**MUEHLBAUER LAW OFFICE, LTD.**
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com
egottlieb@pomlaw.com

*Lead Counsel for Lead Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MAC COSTAS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ORMAT TECHNOLOGIES, INC., ISAAC ANGEL, and DORON BLACHAR,<br><br>    Defendants. | No. 3:18-cv-00271-RCJ-WGC<br><br>Hon. Robert C. Jones<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF; MOTION; MEMORANDUM OF POINTS AND AUTHORITIES** |

**NOTICE OF LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

Lead Counsel Pomerantz LLP ("Lead Counsel") hereby respectfully moves this Court for an Order awarding: (i) attorneys' fees; (ii) reimbursement of out-of-pocket litigation expenses; and (iii) payment to Lead Plaintiff for its efforts overseeing the litigation.

Lead Counsel is contemporaneously filing herewith a memorandum of points and authorities and accompanying Declaration of Jeremy A. Lieberman in Support of: (1) Lead Plaintiff's Consented Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff ("Lieberman Declaration") and the exhibits attached thereto, incorporated herein by reference, in support of this motion.

This Motion is based on the following memorandum of points and authorities and accompanying Lieberman declaration and the exhibits attached thereto, the Court's file in this action, and any additional evidence or argument that the Court may request.

The [Proposed] Order and Final Judgment, negotiated by the Parties (*see* Ex. D. to Settlement Stip., Dkt. No. 83-2), is also filed with Plaintiff's Consented Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation.

Defendants do not oppose the relief requested.

**TABLE OF CONTENTS**

NOTICE OF LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF ...........................i

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES....................................................................................................iii

I.      INTRODUCTION .......................................................................................................1

II.     ARGUMENT ...............................................................................................................3

        A.      This Court Should Approve Lead Counsel's Request for Attorneys' Fees of one-third of the Common Fund .......................................................................................3

                1.      The Common Fund Doctrine Warrants an Award of Attorneys' Fees to Plaintiff's Counsel ..................................................................................3

                2.      The Court Should Apply the Percentage-of-Recovery Method .................4

                3.      Attorneys' Fees of One-Third of the Settlement Fund is Reasonable........4

                4.      Evaluation of the Ninth Circuit's Factor for Awarding Attorneys' Fees in Common Fund Cases Supports a One-Third Fee in this Case ....................5

                        a.      The Result Counsel Achieved Supports a One-Third Fee...............6

                        b.      The Risks of Litigation .................................................................7

                        c.      Skilled Counsel Performed Quality Work to Reach the Settlement 9

                        d.      The Contingent Nature of Counsel's Fee and the Financial Burden Lead Counsel Carried ...................................................................10

                        e.      A One-Third Fee Award Is Reasonable and Is Comparable to Attorneys' Fees Awarded in Similar Cases...................................12

                5.      The Reaction of the Settlement Class.......................................................14

                6.      The Lodestar Cross-Check Supports A One-Third Fee ............................14

        B.      The Court Should Approve Reimbursement from the Settlement Amount of Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement ...............16

        C.      The Court Should Approve an Award to Lead Plaintiff for Its Reasonable Costs and Expenses Related to Their Service to the Class............................................18

III.    CONCLUSION ........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig..*,
  No. CV-10-06352 (MMM) (JCGx), 2014 WL 10212865 (C.D. Cal. July 28,
  2014).............................................................................................................................................18

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996)....................................................................................................11

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................9

*ATLAS v. Accredited Home Lenders Holding Co.*,
  No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ................................7

*In re Banc of California Sec. Litig.*,
  No. 17-cv-00138, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .......................................2, 13

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on
  other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713
  (11th Cir. 2012) .........................................................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ...................................................................................................................11

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...............................................................................................................4, 13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .....................................................................................................................3

*Buccellato v. AT & T Operations, Inc.*,
  No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001) .......................................................................................................6

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)...............2, 5, 13

*Christine Asia Co. v. Yun Ma*,
   No. 1:15-MD-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16,
   2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020
   WL 763277 (2d Cir. Jan. 2, 2020) ............................................................................. 18

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) ..................................................................................... 14

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................... 13

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................................... 8

*Ellison v. Steven Madden, Ltd.*,
   No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ................... 4

*In re Flag Telecom Holdings*,
   No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y.
   Nov. 5, 2010) .............................................................................................................. 8

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................................... 17

*Heit v. Ormat Technologies, Inc. et al.*,
   C.A. 44366-05-18 ....................................................................................... 1, 2, 3, 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................... 6

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .......... 9, 14

*Hopkins v. Stryker Sales Corp.*,
   No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ....................... 15

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................................. 9

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 14, 18

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.,
   Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...... 5, 6, 11

*Jenson, v. First Tr. Corp.*,
   No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008) ............2, 13, 18

*Katz v. China Century Dragon Media, Inc.*,
   No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)..................4, 17

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ...........................................................................................13

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd,* 151
   F.3d 1234 (9th Cir. 1998) ................................................................................................18

*Luna v. Marvell Tech. Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ................................17

*In re M.D.C. Holdings Sec. Litig.*,
   No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .................................13

*Mauss v. NuVasive, Inc.*,
   No. 13cv2005 JM (JLB), 2017 U.S. Dist. LEXIS 41894 (S.D. Cal. Mar. 22,
   2017)...............................................................................................................................10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ..................................6

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ........................................................................................................15

*In re Nuvelo, Inc. Sec. Litig.*,
   No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ...................................13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F,*
   688 F.2d 615 (9th Cir. 1982) .............................................................................................6

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................6, 9, 10, 17

*In re Oracle Corp. Sec. Litig.*,
   No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ........................................11

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................................................4

*Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*),
   47 F.3d 373 (9th Cir. 1995) ............................................................................................4, 7

NOTICE OF LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*Redwen v. Sino Clean Energy, Inc.*,
  No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013)............................9

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................................11

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) .................................6

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ..........................................................................................5

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019) ..........................................................................................10

*Rutti v. Lojack Corp.*,
  No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) .......................15

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) ...................................................................................15

*Szymborski v. Ormat Techs., Inc.*,
  No. 3:10-CV-132-RCJ, 2012 U.S. Dist. LEXIS 148545 (D. Nev. Oct. 16,
  2012)..........................................................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................11

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...........................................................................................3

*Vincent v. Reser*,
  No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ..............................3, 17

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................................*passim*

*Ward v. Succession of Freeman*,
  854 F.2d 780 (5th Cir. 1988) .........................................................................................11

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe &
  Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ......................................................4, 5, 15

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .........................................................11, 12, 18

*In re Zynga Sec. Litig.*,
  No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27,
  2015) ..............................................................................................................................8

**Statutes**

15 U.S.C. § 78u-4(a)..................................................................................................4, 18

Israel Securities Laws, 1968 ............................................................................................7

Private Securities Litigation Reform Act of 1995 .................................................4, 9, 18

Securities Exchange Act of 1934 .....................................................................................7

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2019 Review and
  Analysis* (Mar. 11, 2020) ............................................................................................7

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986)................................15

Stefan Boettrich & Svetlana Starykh, "*Recent Trends in Securities Class Action
  Litigation: 2018 Full-Year Review*", NERA Economic Consulting (Jan. 29,
  2019)............................................................................................................................13

Lead Counsel Pomerantz LLP ("Lead Counsel"),[1] respectfully submits this memorandum of points and authorities in support of its motion for an application for an award of attorneys' fees, reimbursement of litigation expenses, and Award to Lead Plaintiff.[2]

## I. INTRODUCTION

As detailed in the Stipulation, Ormat Technologies Inc. ("Ormat" or the "Company"), Isaac Angel, and Doron Blachar ("Defendants") have agreed to pay $3,75,000 in cash to settle the claims Plaintiff alleges in this proposed class action ("Settlement"). Given the relevant circumstances—particularly the Action's complicated nature and the risks of pursuing the Action through summary judgment, trial, and any appeals—this recovery is a favorable result for the Settlement Class. Through the efforts of their counsel, Plaintiff achieved the Settlement through thorough investigation, prevailing on a motion to dismiss the Amended Complaint, and arms' length settlement negotiations carried out with the assistance of a well-respected mediator.

Lead Counsel and Local Counsel, Muehlbauer Law Office, Ltd. ("Muehlbauer Law" and collectively with Lead Counsel, "Plaintiff's Counsel") have not received any compensation or reimbursement of out-of-pocket expenses for their prosecution of this case. Aden, Tirosh & Co., Advocates ("Aiden, Tirosh" or "Israeli Counsel"), which filed an action against Ormat in the Tel Aviv District Court in Israel on behalf of a proposed class of investors who purchased ORMAT common stock on the Tel Aviv Stock Exchange ("TASE") based on the same underlying factual allegations as this Action, *Heit v. Ormat Technologies, Inc. et al.*, C.A. 44366-05-18 (Tel Aviv

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as those in the Stipulation and Agreement of Settlement. (Dkt. No. 83-2).

[2] In light of the current emergency and the Court's general permission to conduct certain hearings via videoconference (General Order 2020-05), the Parties seek the Court's permission to conduct the January 11, 2021 Settlement Hearing in this case (Dkt. No. 88, at 6, ¶ 20) by conference call or by other remote means. If the Court grants permission, Lead Plaintiff will inform the Settlement Class of the change of format by (a) uploading this change to the Claims Administrator's website, (b) issuing a press release/follow-on summary notice, confirming the date and time of the Settlement Hearing and alerting Settlement Class Members to the change and where to seek instructions for participating in the Settlement Hearing, and (c) alerting anyone who files an objection directly about the change.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

1

District Court) (the "Israeli Action"), likewise have not received any compensation or reimbursement of out-of-pocket expenses in connection with their prosecution of the Israeli Action or this action. Lead Counsel respectfully requests to be awarded an attorneys' fee of one-third of the Settlement Fund ($1,250,000),[3] including any accrued interest, and that Plaintiff's Counsel and Israeli Counsel be reimbursed out of the Settlement Fund for out-of-pocket litigation expenses in the amount of $175,832.63 plus any accrued interest, of which is $116,503.50 was incurred by Lead Counsel.

"While the Ninth Circuit in *Hanlon* set 25% as the benchmark award for attorney's fees, in most common fund cases, the award exceeds that benchmark [in complex class actions]." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019); *see also*, *e.g.*, *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *11 & nn.12-13 (C.D. Cal. June 9, 2008) (recognizing that "courts in this Circuit routinely award attorneys' fees of 30% or more in complex class actions" and awarding fee of 33%) (citations and quotations omitted). The one-third fee requested here is in within the range of fees district courts within the Ninth Circuit have awarded in comparable securities class action settlements. *See, e.g.,In re Banc of California Sec. Litig.*, No. 17-cv-00138, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% fee award); *Jenson*, 2008 WL 11338161, at *11 & nn.12-13 (listing cases); *see also* § II(A), *infra*. In addition, the expenses Plaintiff's Counsel incurred in connection with the prosecution of the Action were both reasonable and necessary to prosecute it. *See* Lieberman Decl. ¶¶ 72-75.[4] The expenses Israeli

---

[3] In recognition of Israeli Counsel's efforts in prosecuting the Israeli Action on behalf of TASE investors, as well as its commitment to assist in effectuating the automated "push mechanism" distribution system referenced in paragraphs 51-52 of the Lieberman Declaration, Lead Counsel intends to share a limited amount of the requested attorneys' fees with Israeli Counsel.  *See* Lieberman Decl. ¶ 52(b), (d)

[4] The Declaration of Jeremy A. Lieberman in Support of: (1) Lead Plaintiff's Consented Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff, contains a more detailed description of the allegations and claims, the Action's procedural history, and the events that led to the Settlement, among other matters.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

2

Counsel incurred in connection with the prosecution of the Israeli Action and Israeli Counsel's work assisting Lead Counsel in connection with this Action were both reasonable and necessary to prosecute the actions. *See id*. Lead Plaintiff approved Plaintiff's Counsel's and Israeli Counsel's request for fees and expenses. *See id.*

Finally, Lead Counsel seeks reimbursements to Lead Plaintiff for its time spent in carrying out its obligations on behalf of the putative class. *See* Section II(C), *infra*; Lieberman Decl. ¶¶ 76-77. The requested service award of $15,000 for the Lead Plaintiff is in line with similar awards granted in other matters for the effort Plaintiff expended for members of the Settlement Class.

Accordingly, Lead Counsel respectfully submits that the requested fees, expenses, and reimbursement to Lead Plaintiff should be granted.

## II.    ARGUMENT

### A.    This Court Should Approve Lead Counsel's Request for Attorneys' Fees of one-third of the Common Fund

#### 1.    The Common Fund Doctrine Warrants an Award of Attorneys' Fees to Plaintiff's Counsel

Under the "common fund" doctrine, attorneys who achieve a benefit for a class are entitled to a reasonable fee as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (establishing a common fund for persons other than the lawyer who establishes it entitles lawyer to reasonable attorneys' fees from the fund); *see also Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Even before that, the Ninth Circuit had reasoned that creating, increasing, or preserving a common fund entitles a lawyer to "the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund

---

The Lieberman Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Lieberman Declaration for, among other things, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to a settlement, and a description of the services provided by Lead Counsel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

3

doctrine prevents unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

### 2.   The Court Should Apply the Percentage-of-Recovery Method

Although district courts have the discretion in common fund cases to utilize either the percentage-of-the-fund or the lodestar method, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), courts typically use the percentage-of-recovery method. *See Blum v. Stenson,* 465 U.S. 886, 900, n. 16 (1984) (percentage-of-recovery approach is appropriate for determining attorneys' fees in common fund cases); *see also, Ellison v. Steven Madden, Ltd*., No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominate approach in common fund cases."). District courts apply the percentage-of-recovery approach, preferring it over the lodestar/multiplier approach because "it aligns the lawyers' interests with those of the class [and] also simplifies the approval analysis." *Katz v. China Century Dragon Media, Inc*., No. LACV1102769JAKSSX, 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013). Further, the plain text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") recognizes that the percentage-of-recovery is the preferable approach to awarding fees. See 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, the Court should utilize the percentage-of-recovery method to compensate Lead Counsel in this case.

### 3.   Attorneys' Fees of One-Third of the Settlement Fund is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*), 47 F.3d 373, 379 (9th Cir. 1995);

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

4

*accord Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, "the district court may adjust upward or downward to account for the circumstances in each case" (*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012)), and awards in most common fund cases exceed the 25% benchmark (*Rentech, Inc.*, 2019 WL 5173771, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); citing *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2008); listing other cases).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-check). Here, in view of the result obtained, the contingent fee risk, the lodestar cross-check, and other relevant factors, an award of one-third of the recovery obtained for the Settlement Class is appropriate under either analysis.

### 4. Evaluation of the Ninth Circuit's Factor for Awarding Attorneys' Fees in Common Fund Cases Supports a One-Third Fee in this Case

Courts in the Ninth Circuit consider several factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). These factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–51. The Ninth Circuit has explained that district courts should not use these factors as a rigid checklist or otherwise weigh each factor individually. Rather, courts should evaluate fees they award in the context of the totality of the circumstances. *Id*. Each of these factors, along with the lodestar cross-check, supports approving the requested fee.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

5

### a.    The Result Counsel Achieved Supports a One-Third Fee

Courts consistently recognize that the result achieved is an important factor to consider in evaluating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the "most critical factor is the degree of success obtained"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *Omnivision*, 559 F. Supp. 2d at 1046. Lead Plaintiff and Lead Counsel submits that the $3.75 million proposed Settlement is a favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser, or no, recovery if the case proceeded through class certification, summary judgment, and trial.

The Settlement is in-line with other securities fraud settlements, representing a recovery of approximately nearly 10% of Lead Plaintiff's estimated class wide damages of approximately $38.6 million. Lieberman Decl. ¶¶ 6, 58. The percentage of recovery in this case exceeds recoveries in other securities class actions within the Ninth Circuit. *See, e.g.*, *Brotherhood of Elect. Workers*, 2012 WL 5199742, at *3 (approving settlement recovering about 3.5% of the maximum damages that believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *Omnivision*, 559 F. Supp. 2d at 1042 (~6% recovery of maximum damages (citing *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) (median recovery between 2% to 3% of maximum damage)).[5] The recovery also compares favorably to recoveries achieved in cases in other Circuits. *See, e.g., In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (A settlement representing a recovery of approximately 6.25% of estimated damages is "at the higher end of the range of reasonableness of recovery in class actions securities litigations."); *see also, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses). Additionally, as reported by

---

[5] *See also, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

6

Cornerstone Research, between 2010 and 2019, the median settlement as a percentage of damages in cases alleging Rule 10b-5 violations was 4.6%, and, in 2019, the median settlement as a percentage of damages in such cases was 4.8%. *See* Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis*, at 7, 21 (Mar. 11, 2020) (Dkt. No. 83-5).

The Settlement Amount thus supports this Court's awarding a one-third fee.

### b.  The Risks of Litigation

Another important factor in determining a fair fee award is the risk of further litigation. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense"). As explained in the Lieberman Declaration, substantial risks and uncertainties in the Action required Lead Counsel's skill and focus to bring this matter to a favorable resolution. *See, e.g.*, Lieberman Decl., at ¶¶ 31-48.

Although the Amended Complaint survived Defendants' motion to dismiss, there was a significant risk that Lead Plaintiff would ultimately fail to establish liability, including the necessary elements of falsity, scienter and causation, and the Settlement Class' full amount of damages. *See id.* Lead Plaintiff faced challenges in proving that Defendants' alleged misstatements about Ormat's deferred tax assets and internal controls were materially false or misleading and made with scienter. Defendants would have denied that Lead Plaintiff could prove that there was an intentional or severely reckless violation of the Securities Exchange Act of 1934 ("Exchange Act") or Israel Securities Laws, 1968 ("Israel Securities Law"). Countering Defendants' denial at summary judgment and trial would have required voluminous, complicated evidence, including likely expert testimony, regarding Ormat's accounting policies and procedures, accounting for deferred tax assets, and internal controls. Significant hurdles to Lead

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

7

Plaintiff's ability to establish the key element of falsity and scienter before a fact-finder loomed large.

In addition, the Parties have asserted different positions regarding loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). As courts in this Circuit have recognized, "in any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial." *See In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, *35 (N.D. Cal. Oct. 27, 2015); *see also In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *53-54 (S.D.N.Y. Nov. 5, 2010) ("Even in a less challenging case, [c]alculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion …."). Absent this Settlement, Defendants would likely continue to assert that Lead Plaintiff will be unable to prove loss causation for a variety of reasons, including that the stock price declines on the alleged corrective disclosure dates were not statistically significant and that therefore no credible expert could opine that the price declines on those days were attributable to the revelation of the alleged fraud. *See* Lieberman Decl., at ¶¶ 38 - 41. Defendants would also likely have argued that the stock price declines were caused, not by the alleged corrective disclosure, but by other adverse news unrelated to the fraud. *See id*. If Defendants' loss causation and damages attacks prevailed, the class claims would have failed or been substantially devalued. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement and noting that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" with "[t]he outcome of that analysis [being] inherently difficult to predict"). At summary judgment and trial, the Parties would have vigorously contested loss causation, involving a costly and unpredictable battle of the experts.

Accordingly, Lead Plaintiff faced the possibility that the Court would grant Defendants' anticipated motion for summary judgment and, regardless of who would ultimately be successful at trial, both sides would have had to present complex and nuanced information to a jury with no certainty as to the outcome. *See Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee).[6]

Absent the proposed Settlement, Lead Plaintiff and the Settlement Class faced the risk of years of litigation with no guarantee of a greater recovery. Lead Counsel achieved a positive result for the Settlement Class in the face of many risks. Under these circumstances, the result in the case, too, supports awarding one-third in attorneys' fees.

### c.   Skilled Counsel Performed Quality Work to Reach the Settlement

Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig*., No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino,* 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.,* No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, Lead Counsel investigated Lead Plaintiff's claims to formulate its theory of the case, and filed the Amended Complaint. Lead Counsel's investigation included, *inter alia*, reviewing and analyzing publicly available information concerning Defendants, attempting to

---

[6] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See Redwen v. Sino Clean Energy, Inc.,* No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig*., No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010))); *In re Ikon Office Sols., Inc., Sec. Litig*., 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

9

interview former Ormat employees, and working with Plaintiff's loss causation, accounting and damages consultants to analyze the strengths and weaknesses of the claims asserted in the Action. *See, e.g.*, Lieberman Decl., at ¶¶ 3, 31.

Lead Counsel, Pomerantz LLP ("Pomerantz"), are experienced securities class action litigators.[7] Courts around the country have recognized Pomerantz's experience and competence. *See, e.g.*, *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 76 (D.N.J. 2019) ("Upon review of the exhibits demonstrating [Pomerantz LLP's] credentials, the Court is satisfied that counsel is qualified to represent the Classes."); *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2017 U.S. Dist. LEXIS 41894, at *7 (S.D. Cal. Mar. 22, 2017) ("[Pomerantz LLP] ha[s] extensive experience in the prosecution of federal securities class actions[,] … [is] knowledgeable about federal securities laws and ha[s] successfully prosecuted hundreds of class actions."). The favorable Settlement is attributable in substantial part to Lead Counsel's diligence, determination, hard work, and skill as it developed, litigated, and successfully negotiated the Settlement. This factor supports a one-third fee.

### d.    The Contingent Nature of Counsel's Fee and the Financial Burden Lead Counsel Carried

Lead Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave it uncompensated for its time, as well as for its out-of-pocket expenses. Courts across the country recognize that the risk of receiving little or no recovery is a material factor in determining an award of attorneys' fees. *See Vizcaino*, 290 F.3d at 1048–50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Brotherhood of Elec.*

---

[7] Pomerantz's firm resume is attached as Exhibit A to the Declaration of Jeremy A. Lieberman of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), which is Exhibit 1 to the Lieberman Declaration.

*Workers*, 2012 WL 5199742, at \*4 (awarding percentage of the common fund and noting that "[p]laintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis."). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).[8]

Indeed, in many securities class actions, plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended considerable resources, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). Often, because of discovery of previously unknown facts, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, contingency litigation yields no fee for counsel. *See, e.g, Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Properties*, Inc., 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy*,

---

[8] Additionally, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the risks undertaken with a clear view of the economics of a securities class action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

11

*Inc., Sec., Derivative & "ERISA" Litigation* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting securities class action defendants' motion for judgement as a matter of law after jury issued $530 million verdict in plaintiffs' favor), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Since Lead Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that achieving success on behalf of Lead Plaintiff and the Class depended upon Lead Counsel's expending significant amounts of time, effort, and expense. Unlike Defendants' counsel who are paid hourly and reimbursed for their out-of-pocket expenses on a current basis, Lead Counsel has received no compensation for their efforts on behalf of Lead Plaintiff and the Class during the course of this litigation. Absent this Settlement, a material risk existed that Settlement Class Members and their counsel would obtain no recovery. Lead Counsel have risked non-payment of its out-of-pocket expenses and time dedicated to working on this matter, knowing that if their efforts were not successful, no fee would be paid. The contingent nature of Lead Counsel's fee arrangement with Lead Plaintiff supports a one-third fee.

> e.   **A One-Third Fee Award Is Reasonable and Is Comparable to Attorneys' Fees Awarded in Similar Cases**

Lead Counsel's requested one-third fee is reasonable when compared to fee awards in similarly-sized securities class action settlements from district courts within the Ninth Circuit. *See, e.g.*, *Szymborski v. Ormat Techs*., Inc., No. 3:10-CV-132-RCJ, 2012 U.S. Dist. LEXIS 148545, at *5-6 (D. Nev. Oct. 16, 2012) (Jones, J.) (awarding 30% fee; noting that the 30% fee

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

12

award "does not seem an extraordinary or extravagant fee for counsel" given that counsel litigated the case without recompense for over two years, achieved a favorable settlement, had not received any objections to any aspects of the settlement or fee request, undertook the class action on a contingency fee basis, and "litigated complex issues of accounting rules and stock market behavior"); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (awarding fees of 33% of $6,517,500 settlement); *Rentech, Inc.*, 2019 WL 5173771, at *9 (awarding fees of one-third of $2,050,000 settlement); *Jenson*, 2008 WL 11338161, at *11 & n.12 (awarding fees of 33% and listing other cases from within the Ninth Circuit granting in fees of one-third or greater); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in result in fees above 25%."). It is also in line with awards in settlements by district courts outside of the Ninth Circuit. *See, e.g.*, *Jenson*, 2008 WL 11338161, at *11 & n.12 (collecting cases). Further, according to research by NERA Economic Consulting, the median award of attorneys' fees in class action securities cases with settlements below $5 million was 33% between 2014 and 2018. *See* Stefan Boettrich & Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review," NERA Economic Consulting, at 41 (Jan. 29, 2019) (attached as Exhibit 5 to the Lieberman Decl).

Further, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g.*, *Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case had gone to trial).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

13

Accordingly, the attorneys' fee that Lead Counsel requests is within the range of fees district courts within the Ninth Circuit have awarded in comparable securities class action settlements.

### 5. The Reaction of the Settlement Class

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award fees and reimbursement of out-of-pocket expenses. *See Heritage*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."). To date, Strategic Claims Services has mailed and emailed to potential Settlement Class members 27,090 copies of the Long Notice and Proof of Claim and Release Form ("Notice Packet"), published the short Publication Notice in English over *Globe Newswire* and in Hebrew over *Yisrael Hayom* and *Globes*, and uploaded to a URL copies of the Settlement Stipulation, Notice Packet (in Hebrew and in English), and Preliminary Approval Order, among other relevant information and materials. Bravata Decl. ¶¶ 7, 10-12, 15. The Long Notice and Publication Notice informed potential class members that Lead Counsel would see a fee award of up to one-third of the $3.75 million Settlement. *See, e.g.*, Bravata Decl. Ex. A, at 1; Ex. C. While the time to object to the fee and expense application does not expire until January 4, 2021, to date, not a single objection has been received. *Id.* at ¶ 14. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Should Lead Counsel receive any objection, Lead Counsel will address them in its reply papers due by 5:00 P.M. on January 6, 2021. The lack of objection to the fees Lead Counsel notified the Settlement Class they would seek further supports a one-third fee.

### 6. The Lodestar Cross-Check Supports A One-Third Fee

Courts often compare attorneys' lodestar with a requested fee request made under the percentage of the fund method as a "cross check" on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050; *see also In re Coordinated Pretrial Proceedings in Petroleum Prod.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

14

*Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiff's Counsel's combined lodestar to date is $575,161.00, of which $508,801.00 is attributable to Lead Counsel. The requested fee represents a multiplier of approximately 2.17. Lieberman Decl. ¶ 68. The Ninth Circuit recognizes when utilizing the percentage-of-fund approach in common fund cases and applying a lodestar cross-check, an award resulting in a multiplier several times the lodestar is appropriate as this rewards attorneys "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino*, 290 F.3d 1043 approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.; see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier).[9]

Plaintiff's Counsel's lodestar represents 922.6 hours of work at current billing rates. Lieberman Decl. ¶ 5.[10] With respect to billing rates, Plaintiff's Counsel submit that the rates

---

[9] "It is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299.

[10] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

15

billed, for attorneys ranging from $460 to $975 are comparable to peer defense-side law firms litigating matters of similar magnitude.  *Id*. ¶ 67.

Lead Counsel will also do additional work in support of the Settlement and distribution of the Settlement Fund to Settlement Class Members for which it will receive no additional compensation, including: drafting and filing its replies in further support of its final approval and fee request motions; preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process being; moving for distribution the Net Settlement Fund in accordance with the Claims Administrator's recommendation; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid claims. The lodestar cross check, therefore, supports this Court's awarding a fee of one-third of the Settlement Fund.

Considering these factors together, including Plaintiff's Counsels' risk, their efforts, and the result in this case, this Court should award a fee of one-third.

### B. The Court Should Approve Reimbursement from the Settlement Amount of Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement

Plaintiff's Counsel have incurred expenses in an aggregate amount of $117,928.31 in prosecuting the Action,[11] and Israeli Counsel have incurred expenses of $57,904.32 in connection with their investigation and prosecution of the Israeli Action. The total reimbursement amount of $175,832.63 requested here is $60,832.63 above the amount of expenses stated in the Long Notice and Publication Notice, due to the fact that the Israeli Counsel's expenses were not included or considered in the Notice and Publication Notice (since the agreement with them had not yet occurred at the time Notice was issued). These expenses are outlined in counsels' declarations submitted to the Court concurrently herewith. *See, e.g.*,

---

3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

[11] This portion of the expense request is comprised of $116,584.26 in expenses attributable to Pomerantz and $1,344.05 in expenses attributable to Liaison Counsel.

Lieberman Decl., ¶¶ 72-75, Exs. 1-3 to the Lieberman Decl. (Pomerantz Fee Declaration ¶¶ 7-8; Muehlbauer Fee Decl. ¶¶ 7-8.; Aiden Expense Decl. ¶¶ 10-11). Nevertheless, on a per share basis, they represent a *de minimis* amount to Class Members, representing less than one penny per share. Lieberman Decl. ¶ 78.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Reser*, 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Counsel here seeks expenses that are of the type routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *Katz*, 2013 WL 11237202, at *8 (granted expenses for "filing fees … private investigation fees, service of process fees, … press release and notice fees, expert consulting costs, photocopying costs, and online legal research expenses, and travel associated with pursuing the case."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary.). The largest expenses Plaintiff's Counsel incurred include expert and mediation related costs. *See* Exs. 1-3 to the Lieberman Decl.

Counsel's expenses, in an aggregate amount of $175,832.63 were reasonably and necessarily incurred in connection with the prosecution and resolution of the Action and should be approved.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

17

### C. The Court Should Approve an Award to Lead Plaintiff for Its Reasonable Costs and Expenses Related to Their Service to the Class

In connection with Lead Counsel's request for reimbursement of litigation expenses, Lead Counsel seeks $15,000 as a service award to Lead Plaintiff to compensate it for its time dedicated to this litigation. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4). Accordingly, "[c]ourts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008). The Ninth Circuit has noted that "[i]ncentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecute." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

The award requested here is reasonable. Courts within this circuit and around the country have granted similar, and even larger, reimbursements to class representatives. *See e.g., Immune Response,* 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Jenson,*, 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Linney*, 1997 WL 450064, at *7 ($25,000 reimbursement to lead plaintiff); *In re Am. Apparel, Inc. S'holder Litig..*, No. CV-10-06352 (MMM) (JCGx), 2014 WL 10212865, at *33 (C.D. Cal. July 28, 2014) ($6,600 reimbursement to lead plaintiff); *Christine Asia Co., Ltd. v. Yun Ma.*, No. 15-md-2631-CM-SDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ($12,500 award to each lead plaintiff given they "devoted substantial time and effort to the litigation", including "reviewing pleadings and briefs… and evaluating and approving the settlement."); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

18

important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

Lead Plaintiff fulfilled its obligations as the representative of this Action, reviewing all pleadings, discussing with counsel Defendants' motions to dismiss and Lead Plaintiffs' opposition thereto, and participating in and approving the Settlement amount and reviewing the settlement papers. Lead Plaintiff's efforts on behalf of the Settlement Class are detailed in the Lieberman Declaration. Accordingly, Lead Counsel respectfully requests that this Court approve a payment of $15,000 to Plaintiff.

**III.    CONCLUSION**

For the above reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of one-third of the Settlement Fund ($1,250,00 million), reimbursement of out-of-pocket litigation expenses in the amount of $175,832.63 plus interest accrued, and a $15,000 award to the Lead Plaintiff.

Dated: December 21, 2020                    Respectfully submitted,

                                            **MUEHLBAUER LAW OFFICE, LTD.**

                                            By:   /s/ *Andrew R. Muehlbauer*
                                            ANDREW R. MUEHLBAUER, ESQ.
                                            Nevada Bar No. 10161
                                            7915 West Sahara Avenue, Suite 104
                                            Las Vegas, Nevada 89117
                                            Tel.: 702.330.4505
                                            Email: andrew@mlolegal.com

                                            **POMERANTZ LLP**
                                            Jeremy A. Lieberman (*pro hac vice*)
                                            Murielle J. Steven Walsh (*pro hac vice*)
                                            Eric D. Gottlieb (*pro hac vice* forthcoming)
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Tel:    (212) 661-1100
                                            Email: jalieberman@pomlaw.com
                                                   mjsteven@pomlaw.com
                                                   egottlieb@pomlaw.com

                                            *Attorneys for Lead Plaintiff Phoenix*
                                            *Insurance Company Ltd.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

19

# CERTIFICATE OF SERVICE

I, ANDREW R. MUEHLBAUER, hereby certify that on December 21, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Andrew R. Muehlbauer*

Andrew R. Muehlbauer